[Crim. No. 803.   In Bank. — September 11, 1901.]

## Ex parte HENRY PFIRRMANN, on Habeas Corpus.

LICENSE TAX — POWER OF SUPERVISORS IN MUNICIPALITIES REPEALED. — Under the act of 1901 (Stats. 1901, p. 635), adding section 3366 to the Political Code, the power of county supervisors to license business for revenue purposes within the limits of municipalities is repealed by necessary implication; and they are forbidden to impose any license tax, either for purposes of revenue or regulation, within such limits.

ID. — CONSTITUTIONAL LAW — TITLE OF ACT — DUPLICITY — SINGLE SUBJECT-MATTER. — The title of the act of 1901 entitled "An act to add a new section to the Political Code of the state of California, to be known as section 3366, relating to the powers of boards of supervisors, city councils, and town trustees, in their respective counties, cities, and towns, to impose a license tax," is in furtherance of section 11 of article XI of the constitution, and there is no duplicity in the subject-matter. It contains a single subject-matter, relating to the issuance of licenses, for regulative purposes, by counties, cities, and towns.

ID. — CONSTRUCTION IN RELATION TO TITLE — "LICENSE TAX" — PRESUMPTION OF VALIDITY. — The act of 1901 is to be presumed valid, and so construed, if possible. The words "license tax," in the title, will not be construed to mean "license taxes for revenue," which are thereby repealed, but are to be construed as synonymous with "license fee or charge," as a police regulation.

ID. — CONSTRUCTION OF CONSTITUTION — POWER OF LEGISLATURE. — Section 12 of article XI of the constitution, forbidding power to the legislature to impose taxes for county, city, town, or other municipal purposes, but authorizing it by general laws to vest power in the corporate authorities to assess and collect taxes for such purposes, does not prohibit the legislature from forbidding them to collect a license tax for revenue.

ID. — EFFECT OF SPECIAL INCONSISTENT ACT OF SAME DATE. — The special act of the same date with the act establishing section 3366 of the Political Code, applicable only to municipal corporations of the fifth class, and inconsistently providing for power of such corporations to license for purposes both " of regulation and revenue," if it be considered as passed subsequently, could only operate to repeal that section *pro tanto;* and if considered as an unconstitutional special law, it will not be construed to render void the general law by being incorporated therein, and read as part thereof.

APPLICATION to the Supreme Court for writ of *habeas corpus* to the Chief of Police of the City of Los Angeles.

The facts are stated in the opinion of the court.

Taylor & Mason, Frank James, and Frank G. Finlayson, for Petitioner.

Thomas P. Boyd, City Attorney of San Rafael, Guy R. Kennedy, City Attorney of Chico, and A. Webster, City Attorney of Paso Robles, *amici curiæ*, for Petitioner.

James C. Rives, District Attorney, Curtis D. Wilbur, Chief Deputy, and F. R. Willis, Deputy, for Respondent.

GAROUTTE, J. — Petitioner is restrained of his liberty upon a charge of violating an ordinance of the county of Los Angeles, in refusing to pay a liquor license of fifteen dollars per month, prescribed by the aforesaid ordinance. He is a resident of the city of Los Angeles, conducts his liquor business therein, and pays the license demanded by the ordinances of said city.

Whether or not the license fee or tax demanded by the county of Los Angeles under its ordinance be considered a fee or tax for revenue or for regulation of the business, is an immaterial matter; for, by virtue of the provisions of an act of the legislature (Stats. 1901, p. 635), a county has no power to demand a license fee or tax, either for purposes of revenue or regulation, from persons carrying on business within the limits of municipalities. Among other matters, that act provides: "Boards of supervisors of the counties of the state, and the legislative bodies of the incorporated cities and towns therein, shall, in the exercise of their police powers, and for the purpose of regulation, as herein provided, and not otherwise, have power to license all and every kind of business not prohibited by law, and transacted and carried on within the limits of their respective jurisdictions."

Prior to the passage of the aforesaid act, it may be stated that the law was settled to the effect that within municipalities a board of supervisors had no power to enact police and sanitary measures, and therefore had no power therein to impose a license fee or tax for the purpose of regulating the liquor business, or any other business. In the absence of some direct and explicit constitutional provision, this court would not declare the existence of such a power; for difficulties and confusion arising from a clash of jurisdictions would be the only result to follow, if both the county and the munici-

pality possessed the power of enacting police and sanitary measures within the confines of a municipality. It is said in *Ex parte Roach*, 104 Cal. 277: "It is not to be supposed that it was the intention of the people, through their constitution, to authorize a county to exercise the same power within the territory of the city as the city itself could exercise, or to confer upon the county the right to interfere with or impair the effect of similar legislation by the city itself." And in construing section 11 of article XI of the constitution, wherein is found this grant of power to counties and municipalities to enact police and sanitary regulations, this court said, in the same case: "Full effect can be given to the section by holding that each has been given the exclusive right of legislation within its own particular boundaries. By the organization of a city within the boundaries of a county, the territory thus organized is withdrawn from the legislative control of the county upon the designated subjects, and is placed under the legislative control of its own council; and the principle of local government which pervades the entire instrument is convincive of the intention to withdraw the city from the control of the county, and to deprive the county of any power to annul or supersede the regulations of the city upon the subjects which have been confided to its control." It is claimed upon the part of respondent, that *Ex parte Roach*, 104 Cal. 277, only goes to the extent of holding that where a conflict arises between the respective regulating ordinances of a county and municipality, that then, in such a case, the ordinance of the municipality within its jurisdiction is controlling. *County of Los Angeles* v. *Eikenberry*, 131 Cal. 461, to some extent places this construction upon *Ex parte Roach*, 104 Cal. 277. But, as is plainly seen from the language taken from the opinion of the court, it has a much broader meaning, and the construction there given the constitutional provision is manifestly the correct one. If for no other reason, the unfortunate results which would necessarily follow from a judicial holding that the powers of counties and municipalities derived from the constitution as to the enactment of police and sanitary measures within the municipality were concurrent, justified the conclusion declared in *Ex parte Roach*, 104 Cal. 277. It may be here suggested that the power of counties to license business undertakings carried on within municipalities, for the purposes of

CXXXIV. Cal.—10

raising revenue, is conceded to have existed prior to the aforesaid act of 1901. (*County of Los Angeles* v. *Eikenberry*, 131 461.)

In view of what has been said, it is apparent that the result of this litigation is dependent wholly upon the validity of the act of 1901, and the construction to be given it if it be declared a valid law. This is evident because, tested by its face, it denies to boards of supervisors the power to license any and all branches of business for the purposes of raising revenue, and also limits their power to that of collecting a license for regulation only without the limits of municipalities. As we have already seen, boards of supervisors, prior to this enactment, possessed only power to license within municipalities for revenue purposes, and that power now being taken away by this act of the legislature, leaves such boards without power to levy and collect by ordinance, within municipalities, any license tax or fee whatever. If the law be valid and this be its proper construction, then the petitioner must be discharged from custody, for he is charged with violating a county ordinance, and, as disclosed by the facts, is engaged only in conducting his business within the limits of the city of Los Angeles.

It is insisted that the act must fall, by reason of a defective title, in this, that the title contains more than one subject-matter. We will not look for a constitutional provision forbidding duplicity of titles, for we fail to find two distinct and different subject-matters of legislation outlined by the title of the act. That title reads as follows: "An act to add a new section to the Political Code of the state of California, to be known as section 3366, relating to the powers of boards of supervisors, city councils, and town trustees in their respective counties, cities, and towns, and to impose a license tax."

1. It is now contended that the subject-matter of the title is duplex, in this, that it purports to treat of the powers of counties exercised through their boards of supervisors, and also of the powers of municipalities exercised through the medium of their governmental bodies. This act, by title, treats of the power of counties and municipalities to issue licenses and charge a fee therefor, under the authority vested in them by the aforesaid provision of the constitution. Such legislation is in line with and in direct furtherance of that provision.

The power is a power vested in common, in the county and the municipality within their respective jurisdictions, and this title deals with this power alone.  The power being in common, there is no duplicity in the subject-matter of the title, and the act is unobjectionable upon the ground urged.

2.  A second objection is made to the title, in that the language, "and to impose a license tax," means "a license tax for revenue."  It is then insisted that the body of the act, instead of providing a license tax for revenue, repeals all license taxes for revenue theretofore existing.  If the construction of this language contended for by respondent would result in destroying the validity of the title of the act, and that result would be followed by a destruction of the act itself, this court would be very slow in arriving at such a construction; for the act should be declared valid by this court, if its invalidity does not plainly appear.  All doubts are to be resolved in favor of its validity, and likewise all proper presumptions are to be invoked to that end.  For these reasons alone, the court feels justified in construing the words "license tax" as synonymous with "license fee or charge"; for the words "license tax" do not necessarily and always mean a license tax assessed and collected for purposes of revenue.  In *Ex parte Ah Toy*, 57 Cal. 92, this court said: " The ordinance is authorized by the legislature, and is a part of the local police regulation of the city, and relates to matters within the city.  Our attention has not been called to any general statute which, in terms or by implication, prohibits the imposition of a license tax as a police regulation."  (See also *State* v. *Camp Sing*, 18 Mont. 143.[1])  All that has been said in sustaining the validity of the title of the act of 1901 may with even more propriety be said as to the validity of the legislation found in the body of that act; and that the body of the act contains but one subject-matter of legislation, as contemplated by the constitution, the court has no doubt.  It contains a single subject-matter, and that subject-matter consists of legislation relating to the issuance of licenses for regulation purposes by counties, cities, etc.  Many acts covering the gravest subject-matters of legislation are found upon the statute-books, which apply, in terms, to both counties and cities,—as, for example, the Purity of Elections Act and the Australian Ballot Law.  No one has

[1] 56 Am. St. Rep. 551.

had the temerity thus far to attack their constitutionality upon the ground here urged.

Prior to the act of 1901, boards of supervisors, by virtue of subdivision 25 of section 25 of the County Government Act, possessed the power to collect a license tax for revenue in all parts of the county. But the act of 1901 must be held to repeal, by implication, the power thus granted. The later act provides: "Boards of supervisors . . . shall, in the exercise of their police powers, and for the purpose of regulation, as herein provided, and not otherwise, have power to license all and every kind of business," etc. This language is too plain to be construed. It speaks for itself, and declares that boards of supervisors may issue licenses for the purpose of regulation alone. The words "not otherwise" curtail and cut off all power boards of supervisors theretofore had to issue licenses and charge therefor as a revenue measure. Some point is made that the phrase, " and not otherwise," should not be construed as relating to and qualifying the powers of the board of supervisors, but should be held to relate to the phrase, "as herein provided." This contention is unsound, for many reasons. The punctuation of the section alone plainly marks a contrary construction. Indeed, it may be said that every feature of this act of 1901 indicates a plain purpose upon the part of the legislature to restrict the licensing power of boards of supervisors and city councils to matters of regulation alone. Further than that, it may be said that the trend of our state policy at the present time looks toward a cessation of legislation which has for its purpose, the raising of revenue by the collection of direct taxes, under the guise of a license, as a condition precedent to the conduct of business. Such legislation seems to be considered an impolitic burden resting upon legitimate business, and a fine assessed upon commercial enterprise.

It is next claimed that the legislature, in effect, is prohibited by section 12 of article XI of the consititution from enacting a law preventing counties, cities, etc., from levying and collecting a license tax for revenue. That section of the constitution is as follows: "The legislature shall have no power to impose taxes upon counties, cities, towns, or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by

general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." There is nothing in this provision justifying the contention made. Even construing the verb "may" as mandatory in effect, still the contention is without force. By this provision of the fundamental law the legislature is directed to vest the power in counties, cities, etc., to assess and collect taxes. If the legislature grants this power to these subordinate divisions of the government, it has the right to say, by the grant, in what manner that power shall be exercised. And therefore it has the right to say that taxes shall be assessed and collected upon real and personal property alone. Indeed, that body may go one step further, as it has done by section 3366 of the Political Code, and declare that taxes shall not be assessed and collected in the form of a license charge upon the right to carry on business.

The following contention is made by the district attorney of Stanislaus County, as *amicus curiæ:* Section 3366 of the Political Code, constituting the act under consideration, went into effect March 23, 1901. Upon the same day an act went into effect (Stats. 1901, p. 656), relating to the powers of municipal corporations of the fifth class. Subdivision 10 of that act, relating to the powers of such municipalities, reads: "To license, for purposes of regulation and revenue, all and every kind of business, including the sale of intoxicating liquors, authorized by law and transacted or carried on in such city," etc. This subdivision deals with the same subject-matter as is covered, in part, by section 3366, and, as seen, directly provides that municipalities of the fifth class may license various branches of business for the purposes of raising revenue. *Amicus curiæ* invokes the doctrine of *Davis* v. *Whidden,* 117 Cal. 618, to the effect that, in the absence of any showing to the contrary, it will be presumed that the various acts of the legislature are printed and published in the statute-books in the order in which they were approved by the governor. He then insists that by the application of the principle of law thus declared, the municipal act is the later act, and therefore repeals section 3366 by implication. A complete answer to his contention in this regard may be found in the fact, that, even conceding a repeal by implication took effect, it would only be a repeal *pro tanto,*— that is, the repeal would only affect municipalities of the fifth class, and that class is not involved in this litigation.

*Amicus curiæ* takes a second position, whereby he insists that section 3366 should be held unconstitutional, and in this regard, his position as to the construction of the act is seemingly antagonistic to the first position occupied; for he now invokes *People* v. *Jackson,* 30 Cal. 427, wherein it is held, "Where two laws are passed on the same day, in relation to the same subject-matter, they are to be read together as if parts of the same act." It is then insisted that these two acts, having taken effect upon the same day, constitute, in effect, one act, and that such consolidated act is unconstitutional, for the reason that it contains special and local legislation; and that it contains special and local legislation is maintained in view of the decisions of this court in cases similar to *Pasadena* v. *Stimson,* 91 Cal. 238. The doctrine of *Davis* v. *Whidden,* 117 Cal. 618, appears to be opposed to a construction which demands the consolidation of two acts, which go into effect upon the same day. But beyond that, if the contention be true that subdivision 10 of the municipal act is unconstitutional and void, as being local and special legislation, then this court certainly will not transplant and construe a void special law into section 3366, a valid general law, if the result of such transplanting would be to render void the valid general law.

For the foregoing reasons the petitioner is discharged from custody.

McFarland, J., Van Dyke, J., Henshaw, J., Beatty, C. J., and Temple, J., concurred.