[Civ. No. 44958. Second Dist., Div. Two. June 11, 1975.]

BOARD OF TRUSTEES OF THE CALIFORNIA STATE
UNIVERSITY AND COLLEGES, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

46

COUNSEL

Evelle J. Younger, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Plaintiff and Appellant.

Burt Pines, City Attorney, Thomas C. Bonaventura, Assistant City Attorney, and David J. Oliphant, Deputy City Attorney, for Defendant and Respondent.

OPINION

**COMPTON, J.**—The California State University at Northridge owns a parcel of real property known as the Devonshire Downs which adjoins the campus. A full-time employee of the university manages Devonshire Downs and negotiates leases therefor in the name of the university. Since 1967, the university has publicly advertised the availability of Devonshire Downs for lease to the general public for the conduct of such diverse activities as shows, fairs, exhibitions, swapmeets and circuses, and such activities have from time to time been conducted thereon by lessees of the university.

On March 12, 1973, the university entered into a lease with the Miller-Johnson Circus, Inc. whereby the latter in exchange for a rental of $4,400 leased the property for 16 days for the purpose of conducting a circus.

Section 53.50 of the Los Angeles Municipal Code requires that any person desiring to conduct a circus within the City of Los Angeles must obtain a permit from the city. The issuance of the permit in addition to requiring a fee therefor is conditioned upon the permittee maintaining the premises where animals are to be kept in a clean and sanitary condition and conducting the business in a manner which will not constitute a menace to the health, peace or safety of the community. Further, the animals are not to be subjected to needless suffering, cruelty or abuse. Thus the permit is both revenue-producing and regulatory in nature.

The Miller-Johnson Circus failed to obtain a permit and together with the university official who leased the property was cited for a violation of the city ordinance.

The Board of Trustees of the California State University and Colleges (board) which is the governing body of the California State University at Northridge, instituted this action in declaratory relief, contending that activities conducted upon the university's property were not subject to regulation by the City of Los Angeles. The criminal charges were dismissed on stipulation that the present action would proceed in order to determine the authority of the city in this dispute. The case was tried on a stipulation of facts which included a stipulation that the city intended to continue to enforce its ordinance on the university property and to cite violators. The trial court gave judgment for the City of Los Angeles. The board appeals.

The City of Los Angeles being a chartered city "may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in [the charter] and in respect to other matters . . . shall be subject to general laws." (Cal. Const., art. XI, § 5.)

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.)

"All lands included within the boundaries of a city are a part of the city. All inhabitants of the city subject to the jurisdiction of the State are subject to the jurisdiction of the city and to all of its ordinances and regulations." (Gov. Code, § 34313; also see *In re Bacon,* 240 Cal.App.2d 34 [49 Cal.Rptr. 322].)

On the other hand, " '. . . the state, when creating municipal governments does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control,' " (*In re Means,* 14 Cal.2d 254, at p. 259 [93 P.2d 105]) and ". . . local ordinances may not impose a regulatory scheme upon private persons which operates to impinge upon the sovereign power of the state [citations]." (*City of Los Angeles* v. *A.E.C. Los Angeles,* 33 Cal.App.3d 933, at p. 940 [109 Cal.Rptr. 519]; also see *City of Orange* v. *Valenti,* 37 Cal.App.3d 240 [112 Cal.Rptr. 379].)

■ The ordinance in question does not purport to regulate state property as such. Its enforcement would, under the circumstances, regulate the conduct of persons who are tenants on state property.

Further, the lease which was executed between the university and the circus provided "Licensee, its agents, employees, and licensees shall not act, or be regarded for any purpose, as officers, employees, or agents of the State of California, the Trustees of the California State University and Colleges, or California State University, Northridge."

■ There is no provision in the law of California which creates enclaves on property owned by the state comparable to the federal enclaves of exclusive federal jurisdiction which exist within the several states. ■ The question here then is whether the state has preempted the field of regulating the type of activity in which the board's lessee was engaged, or whether the regulation of private persons engaged in such activity on the board's land impinges upon the sovereignty of the state. We conclude that both questions must be answered in the negative and resolved in favor of the city's power to enforce its ordinance against the board's lessees.

In *City of Los Angeles* v. *A.E.C. Los Angeles, supra,* this court upheld the imposition of a city tax upon the gross receipts of an electrical contractor performing under contracts with the State of California. The court while emphasizing that the measure at issue was revenue-producing rather than regulatory in nature, upheld the tax even though it was conceded that the cost of such tax might ultimately be passed on to the state.

In comparison the ordinance in question here, while regulatory in nature, affects the board only in whatever manner enforcement might affect the revenue production of Devonshire Downs.

■ The state's immunity from local regulations is merely an extension of the concept of sovereign immunity. The state of the law in the field of tort liability notwithstanding, as against the encroachment of municipal regulation, the doctrine of sovereign immunity remains viable. However, we believe that the previously well recognized distinction between governmental and proprietary activity (*Pianka* v. *State of California,* 46 Cal.2d 208 [293 P.2d 458]; *Schwerdtfeger* v. *State of California,* 148 Cal.App.2d 335 [306 P.2d 960]; *People* v. *Superior Court,* 29 Cal.2d 754 [178 P.2d 1, 40 A.L.R.2d 919]) serves to limit that immunity to the situation where the state is operating in a governmental capacity.

Cases which have denied the ability of a municipality to regulate the conduct of private persons on the ground that such regulation impinged

upon the sovereignty of the state dealt with situations in which the state was clearly acting in its governmental capacity.

"When [the state] engages in such sovereign activities as the construction and maintenance of its buildings, . . . it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation." (*Hall* v. *City of Taft*, 47 Cal.2d 177, at p. 183 [302 P.2d 574]; also see *City of Orange* v. *Valenti, supra.*)

In *Hall*, the City of Taft attempted to enforce building ordinances against a building contractor constructing a school building for a school district. The plans for the building had been approved by the State Department of Education and the State Division of Architecture. The court rejected the city's attempt to regulate the construction.

*In re Means, supra,* involved an attempt by the City of Sacramento to force compliance with an ordinance requiring persons performing labor as journeymen plumbers to procure a certificate of registration. The court rejected the attempt by the city insofar as it pertained to a plumber employed by the state at the state fair grounds, holding that the state was not subject to the legislative enactment of a subordinate government.

In *City of Orange* v. *Valenti, supra,* the Court of Appeal found local parking regulations to directly impact the operation of a state unemployment insurance office and thus to be invalid.

In the case at bar the board leases the Devonshire Downs as a revenue-producing activity. The activities which are conducted thereon by private operators have no relation to the governmental function of the university. "[T]he state is acting in a proprietary capacity when it enters into activities . . . to amuse and entertain the public. The activities of [the board] do not differ from those of private enterprise in the entertainment industry." (*Guidi* v. *State of California*, 41 Cal.2d 623, at p. 627 [262 P.2d 3].) The doctrine of sovereign immunity cannot shield the university from local regulation in this case. Even less defensible is the university's attempt here to extend its immunity to private entrepreneurs who are involved in the local commercial market where their competitors are subject to local regulation. By the terms of the lease the university specifically disavowed any governmental status for its lessee.

We thus turn our attention to the question of whether the state has preempted the field purported to be regulated by the city ordinance and

in passing we note that in *Pasadena School Dist.* v. *Pasadena,* 166 Cal. 7 [134 P. 985], the Supreme Court observing that at that time there was no general state law governing construction of school buildings, upheld the applicability of city building ordinances to construction of school buildings. That case was subsequently disapproved in a case relied on heavily by the board *(Hall* v. *City of Taft, supra)* primarily on the basis of preemption since in the interim the state had adopted a comprehensive regulatory scheme for school construction.

■ The main object of the regulatory scheme of the city ordinance here is the safety of persons and animals in the operation of a circus.

"[A] chartered city or county may not legislate in regard to matters covered by general law if (a) the local legislation attempts to impose additional requirements *(In re Lane,* 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897]), or (b) the subject matter is one of state concern, and the general law occupies the entire field *(Pearson* v. *County of Los Angeles,* 49 Cal.2d 523, 535 [319 P.2d 624]) or (c) the subject matter is of such statewide concern that it can no longer be deemed a municipal affair *(Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158].)" *(In re Hubbard,* 62 Cal.2d 119, at p. 127 [41 Cal.Rptr. 393, 396 P.2d 809].)

The Legislature has authorized the establishment of state college police. (Ed. Code, § 24651.) The board is given the power to adopt rules and regulations not inconsistent with the laws of the state for the government of state colleges. (Ed. Code, § 23604, subd. (c).) Violation of these rules is a misdemeanor. (Ed. Code, § 23604.1.) These isolated sections do not constitute a full regulatory scheme for policing college campuses.

Section 23501 of the Education Code which authorizes the establishment of a police force by the colleges is in no way a preemption of the field. In fact, the college policing seems to be limited to surveillance over and protection of lands and buildings rather than an all-embracing exercise of the police power. (See Ed. Code, § 23604.1.) In any event, it is not uncommon for there to be a concurrent exercise of police power in a given area. (See *In re Bacon,* 240 Cal.App.2d 34 [49 Cal.Rptr. 322]; 43 Ops.Cal.Atty.Gen. 246.)

The general statutory grant of authority (Ed. Code, §§ 23604, 23604.1, 23751) to promulgate regulations for the governing of the state colleges and the general regulations promulgated pursuant to that authority (Cal. Admin. Code, tit. 5, § 40000 et seq.) contain no comprehensive state

scheme for regulating the conduct of circuses or similar exhibitions with specific reference to the safety, health and sanitary problems attendant on such activities. Nor can the board point to any attempt by it to control the activities of its lessees for the purpose of protecting the public, the animals or the neighboring community.

 In the absence of the enforcement of the city's ordinance there would be a void in regulating circuses and similar exhibitions when those activities were conducted on university property thereby creating a status for tenants of the university which would be preferential to tenants of other landowners. This preferential status, under the circumstances, serves no governmental purpose. The subject matter of Los Angeles Municipal Code section 53.50 has not been preempted by the state.

The board makes much of the fact that its employee was cited for violation of the ordinance and argues that this is a clear interference with its right to contract. The city on the other hand questions the authority of the employee to execute the type of lease involved.[1]

While the issue of the employee's authority to execute the contract is debatable, we need not decide it here. The university's ability to contract is only impinged upon by the ordinance to the extent its tenants must comply with the ordinance when they undertake to engage in activities which are governed thereby. Provision for such compliance can be part of the leasing arrangement and would be no more onerous to the university than it would be to any other landowner who leases land for a private commercial venture.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

---

[1] Education Code section 24101 provides in part:

"The trustee, with the approval of the Director of Finance, may lease any property of a State College for any purpose which they determine is not inconsistent with the functions of the California State University and Colleges, including, but not limited to:

"(a) The lease . . . to a nonprofit organization composed exclusively of students . . . or of members of the faculty . . . related to the activities of the university . . .

"(b) The lease . . . to any nonprofit organization for . . . living quarters for students . . . and as meeting places;

"(c) The lease to any student or faculty organization . . . for the purpose of establishing and maintaining co-operative stores, and cafeterias in connection with such stores."

Further, Government Code section 14670 vests in the State Director of General Services the general authority to lease and sublease state property. (Also see 24 Ops.Cal.Atty.Gen. 13.)