[Civ. No. 45831. Second Dist., Div. One. Dec. 10, 1975.]

BEATRICE I. PESOLA, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Flint & MacKay and Hugo E. Pesola, Jr., for Plaintiff and Appellant.

Burt Pines, City Attorney, Thomas C. Bonaventura, Assistant City Attorney, and David J. Oliphant, Deputy City Attorney, for Defendant and Respondent.

OPINION

LILLIE, Acting P. J.—To plaintiff's complaint containing two causes of action, defendant's demurrer was sustained without leave to amend on the ground that each alleged cause failed to state a cause of action. Other grounds of demurrer[1] were placed off calendar. She appeals from order of dismissal.

Plaintiff, a resident of defendant City of Los Angeles, owns a race horse. Pursuant to section 53.15.1 of the Los Angeles Municipal Code, she paid defendant $10 as and for the 1972-1973 Equine License Tax (first cause) and $6 as the 1973-1974 Equine License Tax (second cause), for each of which payment she filed timely claim for refund which claims were denied by defendant. Plaintiff in her complaint alleges that it is her "contention that the City Ordinance is not valid in respect to racehorses, as it was preempted by *Revenue and Taxation Code, § 5701, et seq.*"

Part 12 of division 1, sections 5701-5801, inclusive, of the Revenue and Taxation Code, was added by Statutes 1971, chapter 1759, section 8, pages 3798-3804, effective December 16, 1971, but made operative as of July 1, 1972. Section 10 of the 1971 enactment provided: "Sections 8 and 9 of this act shall become operative on July 1, 1972. A 'racehorse' as defined in Section 5703 of the Revenue and Taxation Code, whether or not such racehorse is exempted under Chapter 3 (commencing with Section 5741) of Part 12 of Division 1 of the Revenue and Taxation Code, shall be exempt from property taxation on and after the lien date for the tax year 1972-1973."

By Statutes 1972, chapter 665, sections 8-45, inclusive, pages 1226-1232, effective August 10, 1972, portions of part 12 of division 1 of the Revenue and Taxation Code were changed, amended or repealed and additions were inserted. Section 44 provided: "It is the intent of the Legislature that in changing the tax imposed by Part 12 of Division 1 of the Revenue and Taxation Code from a fiscal to a calendar year reporting period that such tax will continue to be in lieu of all taxes according to value beginning with the fiscal year 1972-73."

---

[1]Other grounds were impropriety of the class-suit, another action pending, etc.—none of which was ruled upon by the trial court and none of which has been discussed by either party to this appeal. We consider only whether plaintiff as an individual has stated any ground for recovery against defendant city.

Since its adoption in 1971 (operative July 1, 1972) section 5701 of the Revenue and Taxation Code,[2] has remained intact. Section 5721 of the Revenue and Taxation Code, as originally enacted,[3] was amended by the 1972 statute.[4] Each provided that the fee imposed "shall be in lieu of any property tax on racehorses subject to taxation pursuant to this part." The amount imposed, specified in section 5722, varies and covers "Stallions" according to "Stud fee classification" (highest amount imposed being $1,000, lowest $50), "Broodmares" from stakes-winning and producing ($75) to older nonproducing broodmares ($12), active racehorses according to past year's earnings (highest amount imposed being $150, lowest $40); and other racehorses such as stakes three-year-olds and younger ($35) to nonactive racehorses ($20). Under section 5801, subdivision (a), if the tax situs or domicile of the racehorse "was located within any city and any school district, the proceeds from such racehorse shall be distributed one-third to the city, one-third to the school district, and one-third to the county." (§ 5801 provides for different division in other situations.)

█ Appellant contends that by the foregoing enactments the Legislature has preempted the entire subject of every form of taxation for race

[2]Section 5701: "The Legislature finds that subjecting racehorses to the general property tax has resulted in a serious lack of uniformity as between one county and another respecting the method used in arriving at an assessed value; that this has resulted in serious inequities between the owners of racehorses depending in part on the county wherein they are assessed; that a continuation of current assessment practices will result in a substantial decrease in the breeding, boarding and training of racehorses for racing competition in California and that current assessment practices have caused racehorse owners to remove their horses from California to other major breeding states with the result that over a period of time if such assessment practices are continued, both the breeding and racing of racehorses in California will suffer in that the quality and quantity of racehorses will be reduced and impaired; that a severe loss of employment and taxes to breeding and racing will result, attendance at race meetings will decrease and betting will be reduced with consequent substantial loss of revenue to California. It is the intent of the Legislature in enacting this part to establish a more equitable method of taxing racehorses and thereby providing incentives to owners of such horses to maintain their horses within the state by providing for a uniform system of in-lieu taxation for the racehorses subject to the provisions of this part."

[3]As originally enacted by Statutes 1971, section 5721 of the Revenue and Taxation Code provided: "For the 1972-73 tax year and each tax year thereafter, on the privilege of breeding, training, caring for or racing a racehorse in this state, there is hereby imposed an annual fee on such horses to be paid by racehorse owners for such racehorses domiciled in this state, which shall be in lieu of any property tax on racehorses subject to taxation pursuant to this part."

[4]Section 5721 was amended by Statutes 1972 and ever since has provided: "For the 1973 calendar year and each calendar year thereafter, on the privilege of breeding, training, caring for or racing a racehorse in this state, there is hereby imposed an annual tax on owners of racehorses for such racehorses domiciled in this state, which shall be in lieu of any property tax on racehorses subject to taxation pursuant to this part."

horses, and relies mainly upon section 5701 of the Revenue and Taxation Code. Respondent asserts that the enactments, while preempting property taxation according to value, do not preempt other forms of regulatory or revenue fees or taxes.

It is true that the final sentence of section 5701 (*ante,* fn. 2) states in a general fashion an intent to provide for a uniform system of "in-lieu taxation for the racehorses subject to the provisions" of part 12 of division 1 of the code, but the preceding statements in section 5701 instantly show that the Legislative concern was in regard to the general property tax imposed according to value in view of the widely varied manner of making assessment by assessors in different counties of the state. Further, section 5721, Revenue and Taxation Code (*ante,* fns. 3 and 4) at all times expressly has provided that the fee or tax "shall be in lieu of any property tax on racehorses"; section 10 of the 1971 act (Stats. 1971, ch. 1759, at p. 3804) contains the statement that a " 'racehorse' . . . shall be exempt from property taxation on and after the lien date for the tax year 1972-1973"; and section 44 of the 1972 legislation (Stats. 1972, ch. 665, at pp. 1231-1232) expresses the intent that the tax imposed by part 12 of division 1 "will continue to be in lieu of all taxes according to value beginning with the fiscal year 1972-73." The specific language of the foregoing sections shows that the Legislature intended only to preempt property taxation or taxation according to value, and that the enactments do not encompass preemption of other forms of regulatory or revenue fees or taxes. This determination is not contrary to the decisions (*Select Base Materials* v. *Board of Equal.,* 51 Cal.2d 640 [335 P.2d 672]; *Galvan* v. *Superior Court,* 70 Cal.2d 851 [76 Cal.Rptr. 642, 452 P.2d 930]; *California Water & Telephone Co.* v. *County of Los Angeles,* 253 Cal.App.2d 16 [61 Cal.Rptr. 618]) cited by appellant; in fact it is supported by *Select Base Materials* v. *Board of Equal.,* 51 Cal.2d 640, 645 [335 P.2d 672]; and *Galvan* v. *Superior Court,* 70 Cal.2d 851, 859-860 [76 Cal.Rptr. 642, 452 P.2d 930]. (See also: *Board of Trustees* v. *City of Los Angeles,* 49 Cal.App.3d 45 [122 Cal.Rptr. 361]; *Eckl* v. *Davis,* 51 Cal.App.3d 831 [124 Cal.Rptr. 685].)

Citing *Flynn* v. *San Francisco,* 18 Cal.2d 210 [115 P.2d 3], appellant argues that section 53.15.1 of the Los Angeles Municipal Code imposes a tax upon owners for owning equines and thus must be held to be a property tax. That may be true where, as in *Flynn,* the license fee or tax was dependent upon ownership alone; the court there distinguished decisions involving license fees on vehicles used or operated commercially on streets, etc. (See *Flynn, supra,* 18 Cal.2d at p. 214.) But as originally

enacted, section 53.15.1 (operative date extended to July 1, 1972) provided in part: "Any person owning or having custody or control of any equine shall pay for the privilege of keeping such equine a license tax of $10.00 per year." By the 1973 amendment, it was provided "Any person owning or having custody or control of any equine shall pay for the privilege of keeping such equine a license fee of $6.00 per year."[5]

In reply to respondent's position that its municipal code imposes not a property tax but an excise or privilege license tax, appellant refers to the statement in *Flynn* v. *San Francisco,* 18 Cal.2d 210, 214-215 [115 P.2d 3], that "The character of a tax must be determined by its incidents, and from the natural and legal effect of the language employed in the act. [Citations.] The nomenclature is of minor importance, for the court will look beyond the mere title or the bare legislative assertion that the provision is for a license to see and determine the real object, purpose and result of the enactment. [Citations.]" ██ However, as held in *Ingels* v. *Riley,* 5 Cal.2d 154, 160-161 [53 P.2d 939], the legislative characterization of the charge or tax is one of the factors to be considered, as is the fact that the enactment provides for registration and the issuance of identification plates (here tags). Footnote 2 of appellant's reply brief quotes from *Ingels* at page 159 as follows: "The determination of whether a particular tax is a property or excise tax is *not always an easy matter.*" We fail to find such quotation in *Ingels* on page 159, but we do find thereon this statement: "The distinction between a tax on a privilege and a property tax is many times a close one." In *Flynn, supra* (18 Cal.2d at pp. 213-214), the enactment required the owner of any type vehicle to pay a license fee; the imposition was determined solely by ownership. The fee was

---

[5]As originally enacted and as amended, section 53.15.1 also provided for department recordation of the name and address of the person to whom each identification tag was issued, date of issuance and description of equine for which issued; the tag was to be metal with a number and with the words "L.A. City"; and no unauthorized person was to remove from any equine any identification tag issued by the Department of Animal Regulation. The 1973 amendment added provisions, including exceptions to application of the ordinance and defined "equine" to "mean any horse, pony, donkey, burro, or mule, twelve months of age or older." While the 1973 amendment added certain other provisions in addition to the noted ones, they are unnecessary to a determination of this appeal. That the section originally was entitled "Equine License Tax" and referred to "license tax" in one portion (elsewhere referring to "license fee" or "fee"), and that the section as amended in 1973 was entitled "Equine License Fee" and referred to "license fee" or "fee," is a distinction without a difference; for practical purposes these are the same or the equivalent of each other. Another section of the municipal code (§ 53.05) imposes the duty on certain enforcement officers "to take up and immediately deliver to the Department those animals which are authorized and directed to be taken up and impounded by this Article or which are found or kept contrary to the provisions of this Article."

held to be a tax on property hence invalid under constitutional proscription of double taxation on property. In *Ingels, supra* (5 Cal.2d 154), the statute imposed a license fee (both regulatory and for revenue) upon vehicle owners for the privilege of using the state highway. The Supreme Court had no hesitancy in declaring the tax to be a license or privilege tax and not a property tax even though the amount imposed was determinable according to value of the vehicle, a method more commonly used in determination of the amount of a property tax.

In the case at bench, the city's license tax or fee is upon a person "owning or having custody or control of any equine . . . for the privilege of keeping such equine . . . ." That which is imposed is a license or excise tax or fee and is not a property tax. (*Ingels* v. *Riley, supra,* 5 Cal.2d 154, 159-163; see also *In re Ackerman,* 6 Cal.App.5, 15-20 [91 P. 429], opn. on den. of petition for rehg.; see also *Simpson* v. *City of Los Angeles,* 40 Cal.2d 271, 279-282 [253 P.2d 464] [validity of dog license ordinance]; *Board of Trustees* v. *City of Los Angeles,* 49 Cal.App.3d 45 [122 Cal.Rptr. 361] [validity of circus license ordinance].) Being a license or excise tax or fee, it becomes immaterial whether it is for regulation or revenue or both. (*Redwood Theatres* v. *City of Modesto,* 86 Cal.App.2d 907, 918-920 [196 P.2d 119], and cases cited; *City of Glendale* v. *Trondsen,* 48 Cal.2d 93, 103 [308 P.2d 1], quoted in *Silver* v. *City of Los Angeles,* 217 Cal.App.2d 134, 140 [31 Cal.Rptr. 545].) However, in the case at bench it is clearly one mainly for regulation although it also may be partly for revenue.[6]

Likewise without merit is appellant's argument that if defendant city's license tax or fee on equines is not a property tax, nevertheless it is encompassed within the state's tax on the privilege of breeding, training, caring for or racing a racehorse (Rev. & Tax. Code, § 5721, *ante,* fns. 3 and 4), thus the result is unlawful as unconstitutional double taxation. In *Fox etc. Corp.* v. *City of Bakersfield,* 36 Cal.2d 136 [222 P.2d 879], plaintiffs contended that a double tax had been laid upon them. Said the court: "It is conceded that both taxes are excise rather than property taxes. Taxation, other than of property, upon the same activity or incident for the same purpose by the same taxing agency, more than

---

[6]Appellant expresses fear that municipalities (particularly charted cities) will impose privilege taxes for "keeping" automobiles, furniture and other like personalty. In the case at bench, equines are the subject of the enactment which is for regulation (and partly revenue) of keeping them in a large urban city. That is entirely different from automobiles, furniture and the like. The latter are not involved in this case and no determination in connection therewith is made herein.

once in the same period, sometimes called double taxation, standing alone, is not forbidden by the Constitutions, state or federal. [Citations.] It is a factor in determining whether the tax is invalidly discriminatory when it is levied upon some activities but not others, or it may pose a question of substantive due process if its imposition assumes confiscatory or prohibitory characteristics.

"Section 102 of the Revenue and Taxation Code (formerly Pol. Code, § 3607) states that nothing in that 'division' shall be construed to permit double taxation but that 'division' deals solely with property taxes. Our Constitution provides that 'all property' in the state except as otherwise provided 'shall be taxed in proportion to its value.' (Cal. Const., art. XIII, § 1.) And under that provision it has been held that there could be no double taxation of *property*. [Citations.] The distinction between property and other taxes with relation to double taxation is clearly stated in *Ingels* v. *Riley, supra,* 5 Cal.2d 154, 164: 'It is also urged that the act is unconstitutional for the reason that, when read with the provisions of the Vehicle Code, *supra,* double taxation is imposed by the same taxing agency on the same privilege. It is contended that this violates the Constitution, although no provision of either the federal or state Constitution is specifically referred to. This argument is based on the fact that the Vehicle Code, *supra,* section 370, imposes upon all motor vehicle owners as defined in the act, an annual fee of $3.00. There is no merit in this contention. The mere fact that the state has imposed one excise under one act does not prevent the state from imposing another excise upon the same privilege for the same period. Article XIII, section 1, of the state Constitution, has no application, because that section applies only to property taxes.' [Citations.]" (Pp. 140-141.)

Cited in *Fox* is *Redwood Theatres* v. *City of Modesto,* 86 Cal.App.2d 907 [196 P.2d 119], in which the court stated: "Cumulative taxes are not necessarily unconstitutional on the ground of double taxation even though they may be imposed on the same property for the same period of time. . . . And in the text of 51 American Jurisprudence, at page 337, supported by numerous authorities, it is said that 'before invalid double taxation may be said to exist, both taxes must have been imposed in the same year, *for the same purpose,* upon property owned by the same person, and by the same taxing authority.' The foregoing conditions do not appear in the present case." (P. 920.)

In light of our conclusion we deem it unnecessary to consider respondent's argument based upon the fact it is a home rule charter city.

That argument is perhaps best summarized in *City of Glendale* v. *Tronsden,* 48 Cal.2d 93 [308 P.2d 1], upon which respondent relies: "The levy and collection of taxes by a city having a charter under our Constitution is a municipal affair. The power is broad, being limited only by the charter and the Constitution. (*Fox etc. Corp.* v. *City of Bakersfield,* 36 Cal.2d 136 [222 P.2d 879].) . . . '. . . *"the restrictions* on the exercise of that power *are only the limitations and restrictions appearing in the Constitution and in the charter itself."* . . .' " (P. 98.)

The order of dismissal is affirmed.

Thompson, J., and Hanson, J., concurred.