**GREAT WESTERN SHOWS, INC., a Texas corp., Plaintiff–Appellee,**

v.

**LOS ANGELES COUNTY, Defendant–Appellant.**

No. 99–56605.

United States Court of Appeals, Ninth Circuit.

Sept. 12, 2000

Rehearing Denied in No. 98–4523 Oct. 19, 2000.

See also: 229 F.3d 1266.

Before: ALARCON, O'SCANNLAIN, and GOULD, Circuit Judges.

## ORDER

We certify to the California Supreme Court two questions set forth in Part III of this order. The preliminary injunction granted by the district court will remain in place during the pendency of certification. All further proceedings in this case are stayed pending receipt of the answers to the certified questions. This case is withdrawn from submission until further order of this court. If the California Supreme Court accepts the certified questions for answer, the parties shall file a joint report six months after date of acceptance and every six months thereafter advising us of the status of the proceedings. This case is being certified jointly with *Nordyke v. King,* No. 99–17551, which raises a closely related issue of preemption.

### I

Pursuant to Rule 29.5 of the California Rules of Court, a panel of the United States Court of Appeals for the Ninth Circuit, before which this appeal is pending, certifies to the California Supreme Court questions of law concerning the possible state preemption of local gun control ordinances and a jurisdictional conflict between a county and an incorporated city within its borders. The decisions of the Courts of Appeal of the State of California provide no controlling precedent regarding the certified questions, the answers to which may be determinative of this appeal.

We respectfully request that the California Supreme Court answer the certified questions presented below. Our phrasing of the issues is not meant to restrict the court's consideration of the case. We agree to follow the answers provided by the California Supreme Court. If the Supreme Court declines certification, we will resolve the issues according to our perception of California law.

## II

Los Angeles County is deemed the petitioner in this request because it is appealing the district court's ruling on these issues. The caption of the case is:

GREAT WESTERN SHOWS, INC., a Texas corp., Plaintiff—Appellee,

v.

LOS ANGELES COUNTY, Defendant—Appellant.

For the County of Los Angeles: Lawrence L. Hafetz, Senior Deputy County Counsel, Los Angeles, California.

For Great Western Shows, Inc.: C.D. Michel, Trutanich & Michel LLP, San Pedro, California.

Donald B. Kates, Jr., Benenson & Kates, Novato, California.

Michael F. Wright, Patrick J. Walsh, and Armen Tamzarian, Case, Knowlson, Burnett & Wright, LLP, Los Angeles, California.

## III

■ The questions of law to be answered are:

1. Does state law regulating the sale of firearms and gun shows preempt a municipal ordinance prohibiting gun and ammunition sales on county property?

2. May a county, consistent with Article 11, § 7 of the California Constitution, regulate the sale of firearms on its property located in an incorporated city within the borders of the county?

## IV

The statement of facts is as follows:

Great Western Shows, Inc. ("Great Western") operates three gun and collector shows a year at the Los Angeles County Fairgrounds ("Fairgrounds") located in the incorporated city of Pomona. It had been holding shows there for the past 22 years until the fall of 1999. The exhibitors at the show include sellers of antique (pre–1898) firearms, modern firearms, ammunition, Old West memorabilia, and outdoor clothing.

The County of Los Angeles ("County") owns the Fairgrounds, but has contracted their operation to the entirely separate entity, the Los Angeles County Fair Association ("Association"). Prior to the show scheduled for October 1999, the County passed a "Prohibition on the Sale of Firearms and Ammunition on County Property" ("Ordinance"). The Ordinance reads: "The sale of firearms and/or ammunition on County property is prohibited." Los Angeles County Code § 13.67.030. The Ordinance defines "sale" to include "the act of placing an order." *Id.* at § 13.67.040(E). Although the Ordinance applies to all county property, the County passed the law expressly to discourage the Great Western show and the Fairgrounds is the only property at issue in this case.

To prevent the Ordinance's enforcement from interfering with its October 1999 show, Great Western brought suit against the County in the United States District Court for the Central District of California. Great Western filed for a preliminary injunction, arguing that the Ordinance infringes commercial speech in violation of the First Amendment of the United States Constitution. Great Western also challenged the Ordinance on the grounds that it is preempted by state gun control laws and that the County, under California law, has no jurisdiction to legislate within the boundaries of an incorporated city. The District Court granted the preliminary in-

junction. The court found "that Great Western raised a substantial question regarding whether the Ordinance is preempted by state law and whether the County exceeded its lawful authority, and the balance of hardships tips decidedly in favor of Great Western." It did not reach Great Western's First Amendment claims.

The County then filed an interlocutory appeal in the United States Court of Appeals for the Ninth Circuit.

## V

We respectfully submit that the questions need certification for the following reasons:

## A

 "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws.*" CAL. CONST. art XI, § 7 (emphasis added). A local law that conflicts with state law is invalid. *See Sherwin–Williams Co. v. City of Los Angeles,* 4 Cal.4th 893, 897, 16 Cal.Rptr.2d 215, 844 P.2d 534 (1993). "A conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." *Id.* (quotations and citations omitted). The district court concluded that Great Western raised a substantial question that the County Ordinance may be contradictory to state law because it is "inimical thereto." *Id.* California law offers no clear guidance concerning the possible preemption of the Los Angeles Ordinance.

The Ordinance reads: "The sale of firearms and/or ammunition on County property is prohibited." Los Angeles County Code § 13.67.030. The law defines "sale" as "any transaction, with or without the exchange of consideration, which transfers ownership title, possession, or control of any firearm, or gives, loans, leases, or delivers a firearm. A sale includes the act of placing an order for any of the afore-

mentioned transfers. The act of displaying a firearm shall not constitute a sale for the purposes of this chapter." *Id.* at § 13.67.040. The district court concluded, and Great Western argues, that this ordinance is inimical to several provisions of the California Penal Code that provide for the sale of firearms at gun shows.

Section 12071 of the Penal Code regulates the sales of firearms in California. This provision expressly acknowledges that the sale of firearms may be permitted at gun shows so long as there is compliance with local law. It reads in relevant part: "A person licensed pursuant to subdivision (a) may take possession of firearms and commence preparation of registers for the sale, delivery, or transfer of firearms at gun shows or events. . . . A person conducting business pursuant to this subparagraph shall be entitled to conduct business as authorized herein at any gun show or event in the state without regard to the jurisdiction within this state that issued the license . . . provided the person complies with . . . (ii) all applicable local laws, regulations, and fees, if any." Cal.Penal Code § 12071(b)(1)(B). In addition, California Penal Code § 12071.1 regulates gun shows throughout the state. Finally, the state legislature enacted a series of gun show regulations effective January 1, 2000. *See* Cal.Penal Code §§ 12071.1; 12071.4. These laws clearly pertain to the sale of firearms at gun shows. From these provisions, one could well conclude, as the district court did, that "It would be nonsensical to pass a law expressly permitting gun sales at gun shows and then require compliance with a local ordinance that prohibits such sales. It is improbable that the Legislature sought to permit local governments to pass ordinances that directly prohibited state sanctioned activities. As such, the Ordinance conflicts with the state law and is preempted." On the other hand, the proviso may mean that it is not preempted.

The Courts of Appeal of the State of California have responded in seemingly

conflicting ways to this type of argument in the area of local gun regulation preemption. The argument finds most support in *Doe v. City & County of San Francisco*, 136 Cal.App.3d 509, 186 Cal.Rptr. 380 (1982). In that case, the court inferred from the legislature's restriction on local handgun permit requirements an intent to foreclose local laws banning possession citywide. *Id.* at 518, 186 Cal.Rptr. 380. "A restriction on requiring permits and licenses necessarily implies that possession is lawful without a permit or a license. It strains reason to suggest that the state Legislature would prohibit licenses and permits but allow a ban on possession." *Id.; see also Northern California Psychiatric Society v. City of Berkeley*, 178 Cal. App.3d 90, 223 Cal.Rptr. 609 (1986) (holding that a city ordinance prohibiting the use of electroshock therapy throughout the city was preempted by state regulations evincing a clear intent to allow it). Moreover, an Attorney General opinion regarding the preemption of local ammunition sale bans adopts the same reasoning, relying explicitly on *Doe. See* Attorney General's Opinion No. 94–212 (July 7, 1994). In that Opinion, the Attorney General relied on the fact that the state banned ammunition over a certain caliber to conclude that a city could not ban smaller-caliber ammunition. Likewise, the state legislature's having expressly provided for the sale of firearms at gun shows may imply that local ordinances, like that of Los Angeles, banning the sale of such weapons are preempted.

More recently, however, in *California Rifle and Pistol Ass'n. v. City of West Hollywood*, 66 Cal.App.4th 1302, 78 Cal. Rptr.2d 591 (1998), the Court of Appeal for the Second Appellate District of California appears to have disavowed the logic underlying the district court's conclusion and the pertinent part of *Doe*. In *California Rifle*, the court confronted a challenge, on preemption grounds, to a city ban on sales of certain handguns known as Saturday Night Specials. *Id.* at 1306–07, 78 Cal. Rptr.2d 591. The court expressly consid-

ered an argument analogous to the one Great Western makes here-that because state law envisions sales at gun shows, the County cannot foreclose sales at gun shows. There, the court confronted the argument that because under state law sales of firearms are regulated, but legal, a city cannot ban the sale of certain types of firearms. *See id.* at 1323, 78 Cal.Rptr.2d 591. The court rejected this reasoning as tautological: "Again, it is no doubt tautologically true that something that is not prohibited by state law is lawful under state law, but the question here is whether the Legislature intended to strip local governments of their constitutional power to ban the local sale of firearms which the local governments believe are causing a particular problem within their borders." *Id.* at 1324, 78 Cal.Rptr.2d 591. This reasoning appears to be at tension with the reasoning of *Doe.*

Furthermore, the court's discussion of preemption in *California Rifle* suggests that the Ordinance may very well not be preempted. First, the court held that the California legislature has not expressly preempted local regulation of handgun sales. *See id.* at 1311–17, 78 Cal.Rptr.2d 591. Next, the court examined whether, as the district court concluded here, the local law was impliedly preempted. "[I]mplied preemption can properly be found only when the circumstances 'clearly indicate' a legislative intent to preempt." *Id.* at 1317, 78 Cal.Rptr.2d 591 (quoting *Sherwin–Williams*, 4 Cal.4th at 898, 16 Cal. Rptr.2d 215, 844 P.2d 534).

When the Legislature has passed laws to overturn a court's decision that a local government's laws are not preempted, it has tailored them narrowly, refusing at every turn to preempt the entire field of gun control. This history demonstrates "a legislative intent to permit local governments to continue to apply their police power according to the particular needs of the community." *California Rifle*, 66 Cal. App.4th at 1318, 78 Cal.Rptr.2d 591; *see*

also *Suter v. City of Lafayette,* 57 Cal. App.4th 1109, 1119, 67 Cal.Rptr.2d 420 (1997). The careful wording of the legislature's response may indicate that it does not wish to preclude local actions in areas where it has not expressly preempted. *See California Rifle,* 66 Cal.App.4th at 1319–20, 78 Cal.Rptr.2d 591 (discussing *Suter,* 57 Cal.App.4th at 1120–21, 67 Cal. Rptr.2d 420). Finally, the Courts of Appeal of the State of California appear to have foreclosed an argument for gun sale preemption based on the assertion that the adverse affects of a local law on transient citizens outweigh the benefit to the municipality. *See California Rifle,* 66 Cal. App.4th at 1320–21, 78 Cal.Rptr.2d 591.

The California cases teach that when examining the preemption issue in the field of gun control, courts are to look narrowly at the specific conduct at issue-here, the sale of guns on County property. The Ordinance here does not ban sales at gun shows held in the County, it bans sales on County property only. This may distinguish it from the Ordinance held impliedly preempted in *Doe. See* 136 Cal.App.3d at 518, 186 Cal.Rptr. 380. While the Ordinance has the effect of banning sales at the show Great Western has traditionally held at the County Fairgrounds, it does not speak at all to gun shows held on any non-County property in the county. But the question we face is whether the extensive state regulation of gun shows, all of which foresees the sale of firearms, precludes even such action. Also uncertain is whether the state law provisions requiring gun shows to comply with all local regulations allow municipalities to completely prohibit sales at these shows, an action that may have the practical effect of shutting them down.

In sum, there is tension in the reasoning underlying several decisions of the Courts of Appeal of the State of California and an Opinion of its Attorney General. In addition, no California court, to our knowledge, has yet confronted the possible preemptive impact of the new gun show regulations that went into effect January 1, 2000. We are mindful of the considerations of comity when we are being asked to invalidate, on federal constitutional grounds, a local California law. Resolution of the state law issue may obviate the need to decide the federal constitutional question. The area of gun control regulation is a sensitive area of local concern with which we hesitate to interfere, particularly where we are asked to determine unclear questions of state law. A clear statement by the California Supreme Court would provide guidance to local governments with respect to the powers they may exercise in passing local gun control regulations.

**B**

We respectfully submit that state law regarding a county's power to pass laws enforceable against the general public on county property located within an incorporated city is also uncertain. "A county or city may make and enforce *within its limits* all local police, sanitary, and other ordinances and regulations not in conflict with general laws." CAL. CONST. art XI, § 7 (emphasis added). The Fairgrounds are located in Pomona, an incorporated city in the County. Pomona's ordinances regulate the sale of ammunition and prohibit the sale of Saturday Night Specials. The district court concluded that Great Western had raised a substantial question of law regarding whether the County may regulate conduct within an incorporated city. The County does not dispute that the constitutional "within its limits" restriction and subsequent case law mean that a county generally may not regulate within the boundaries of an incorporated city located within the county. The County contends, however, that this doctrine does not apply where the County legislates regarding county-owned land like the Fairgrounds.

There appears to be no clear California law on this issue. The two primary cases cited by the district court and relied upon by Great Western deal with attempts by a

county to pass regulations that applied throughout the city. *See Ex parte Pfirrman,* 134 Cal. 143, 66 P. 205 (1901) (issuing writ of habeas corpus to free county prisoner convicted of violating county liquor control laws within incorporated city); *Ex parte Knight,* 55 Cal.App. 511, 203 P. 777 (1921). In both of these cases, the California courts struck down county attempts to regulate within the boundaries of an incorporated city. *See also City of Dublin v. County of Alameda,* 14 Cal. App.4th 264, 17 Cal.Rptr.2d 845 (1993) (narrowing a county ordinance to apply only in unincorporated areas of the county). As the County points out, however, none of these cases deals with the scenario here where the County attempts to regulate only its own property located in an incorporated city.

Nevertheless, the animating concern in the *Pfirrman* case may be present even when the County tries only to regulate its own property, namely, the "difficulties and confusion arising from a clash of jurisdictions." 134 Cal. at 144, 66 P. 205. In addition, the cases to which the County cites allowing extraterritorial regulation concern situations of a type not present here. *See, e.g., Ebrite v. Crawford,* 215 Cal. 724, 12 P.2d 937 (1932) (upholding city authority to regulate airport located partially within and partially outside the city); *City of South Pasadena v. Pasadena Land & Water Co.,* 152 Cal. 579, 93 P. 490 (1908) (upholding city authority to maintain water supply outside its borders). These cases appear to establish a narrow exception to the general rule against extraterritorial powers "when the possession and exercise of such powers are essential to the proper conduct of the affairs of the municipality." *Ebrite,* 215 Cal. at 729, 12 P.2d 937. No such circumstances appear to be present here. Unlike the case of an airport that cannot function if subject to two different regulatory schemes depending on the location of the land, the Fairgrounds presents no exigent circumstance. We have previously recognized the uncertainty in this area of the law. *See Air Cal. Inc. v. City*

*and County of San Francisco,* 865 F.2d 1112 (9th Cir.1989). "Although a municipality's right to acquire or own property beyond its corporate limits for legitimate municipal purposes is well established, its power to exercise the rights of sovereignty over such property is less so." *Id.* at 1117.

Unless California law would permit concurrent jurisdiction, if the County prevails it then would have exclusive jurisdiction over the Fairgrounds, which would not be subject to local regulation. The *Pfirrman* decision was based not on the existence of a conflict between city and county law, but upon the premise that these two political entities, both creatures of the state, could not have concurrent jurisdiction over the same property. "By the organization of a city within the boundaries of a county, the territory thus organized is withdrawn from the legislative control of the county upon the designated subjects, and is placed under the legislative control of its own council." *Id.* at 145, 66 P. 205. Holding that the County has jurisdiction to regulate its property in Pomona might have the effect of creating a County enclave within the City. But a Court of Appeal of the State of California has held that "[t]here is no provision in the law of California, which creates enclaves on property owned by the state comparable to the federal enclaves of exclusive federal jurisdiction." *Board of Trustees of the California State Univ. & Colleges v. City of Los Angeles,* 49 Cal. App.3d 45, 49, 122 Cal.Rptr. 361 (1975) (holding that a state-owned property within a city must abide by city regulation). If the County's position prevailed, it would mean that Pomona's laws, including its ban on the sale of Saturday Night Specials and regulation of ammunition sales, would become unenforceable at the Fairgrounds, unless California law permitted some form of concurrent jurisdiction whereby the County could enhance protections or prohibitions on its own property without supplanting the municipal ordinances.

■ Only in the narrow area of governmental activity does the County have immunity from local regulation. *See Board of Trustees*, 49 Cal.App.3d at 49, 122 Cal. Rptr. 361. The distinction between governmental and proprietary activity has been abandoned in other areas of the law, most significantly in the tort field from which it sprang. While this doctrine has been on the decline, at least one older California case and a treatise indicate that this distinction remains viable in California municipal law. *See Board of Trustees*, 49 Cal.App.3d at 49, 122 Cal.Rptr. 361 ("The state of the law in the field of tort liability notwithstanding, as against encroachment of municipal regulation, the doctrine of sovereign immunity remains viable."); 8 B.E. Witkin, "Constitutional Law," § 796 in SUMMARY OF CALIFORNIA LAW (9th Ed.1988) ("Although the governmental-proprietary activity distinction has been abrogated in tort liability cases ... it should be applied in the field of local regulation, so as to limit the immunity of the state to situations in which the state is acting in a governmental capacity."). It may be that given the state of the doctrine in other areas of the law, the California Supreme Court will abolish the relevance of the distinction here too. But that is not at all clear today, and it would be improvident for us to make that determination.

If the distinction remains viable, then the question becomes whether the leasing of the fairgrounds for various activities including gun shows is a governmental or a proprietary activity. In addition, there is the question whether that distinction is dispositive if the Ordinance is enacted pursuant to the County's police power. The particular activity in question defines the scope of the inquiry. *See Guidi v. California*, 41 Cal.2d 623, 627, 262 P.2d 3 (1953).[1] In this case, the County provides the venue for a private operator to hold a gun show. In *Board of Trustees*, the court held that the state acted in a proprietary capacity when it ran a horse arena and fireworks show at a state fair. *Hill v. United Brotherhood of Carpetners and Joiners*, 49 Cal.App.3d 614, 625–26, 122 Cal.Rptr. 722. Likewise, leasing property on which gun shows are held is likely a proprietary activity.

The County attempts to regulate not only what appears, following *Board of Trustees*, to be a proprietary function, but also the "conduct of the public at large" at its events. *Hall v. City of Taft*, 47 Cal.2d 177, 183, 302 P.2d 574 (1956). This also would appear to take it outside the realm of governmental activity over which it has immunity from city regulation. *See County of Los Angeles v. City of Los Angeles*, 212 Cal.App.2d 160, 28 Cal.Rptr. 32 (1963). In *County of Los Angeles*, the court held that when constructing its own buildings on county property in an incorporated city, the county acts free of city regulation, but distinguished situations in which the county "enact[ed] laws for conduct of the public at large." *Id.* at 165, 28 Cal.Rptr. 32. The county has no power to regulate the public in incorporated cities. Here the County enacted its Ordinance explicitly to curtail the rash of gunshot casualties in Los Angeles County. In so doing it attempted to act pursuant to its police power to regulate the conduct of the public throughout the County.

An opinion of the Attorney General concludes that a county may prohibit smoking within its buildings. *See* Attorney General Opinion No. 91–719 (December 5, 1991). Its conclusion that the smoking ban may be enforced against the public (based on its statutory power to manage its buildings) does appear at tension with some of the cases discussed above. Like the Attorney General's opinion on ammunition sales, the smoking ban opinion underscores the unsettled nature of state law with regard to conflicting county and city

---

1. Although this case has effectively been overruled in the tort context in which it arose, if the governmental-proprietary distinction is still valid in the municipal law context its analysis applies here.

jurisdiction. Again, given the considerations of comity, we believe it best for the California Supreme Court to provide clear resolution to this question involving the distribution of power among the state's political subdivisions.

### VI

The Clerk of Court is hereby directed to transmit forthwith to the California Supreme Court, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record pursuant to California Rule of Court 29.5(c).

**IT IS SO ORDERED.**