Filed 5/7/15  Graham v. American Golf CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JACK GRAHAM, | B240340, B241341, B245011 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC458571) |
| v. | |
| AMERICAN GOLF CORPORATION et al., | |
| Defendants and Respondents. | |

APPEALS from judgments of the Superior Court of Los Angeles County.  Luis A. Lavin and Barbara Ann Meiers, Judges.  Affirmed.

Jack Graham, in pro. per., for Plaintiff and Appellant.

Lee Tran & Liang, James Lee and Joe H. Tuffaha for Defendants and Respondents.

_____

Plaintiff Jack Graham, who is self-represented, appeals from judgments dismissing certain defendants after Judge Lavin sustained their demurrers and a judgment entered after Judge Meiers granted summary judgment in favor of other defendants. The subject of these rulings was Graham's claims that defendants illegally charged the public for golf services on public golf courses and deprived him of his right to work as a golf instructor at Los Angeles County (County) and City of Long Beach (City) golf courses managed by American Golf Corporation (American Golf). Graham also sued Goldman Sachs Group, Inc., as American Golf's alleged alter ego.

Graham argues that Judges Lavin and Meiers erred in making the above rulings. He also asserts that this case is subject to an automatic stay and that Judge Meiers erred in refusing to stay the case while his appeals from Judge Lavin's demurrer rulings were pending. Finally, he claims for the first time on appeal that Judge Meiers should be recused.

We conclude that the matter was not subject to an automatic stay and that the trial court did not err in sustaining the demurrers, granting summary judgment, and refusing to stay the case before ruling on the summary judgment motions. We also conclude that Graham's recusal request fails for not following the required procedures. Accordingly, we affirm.

## BACKGROUND

**The verified first amended complaint**

Graham filed a complaint in BC458571 in the superior court on April 1, 2011.[1] He filed a verified first amended complaint (FAC) in the same action on May 17, 2011, against the County and several County officials and employees (County defendants); the City and its elected officials and employees (City defendants); American Golf; several American Golf officers (American Golf individual defendants); the Goldman Sachs Group, Inc., GS Capital Partners 2000 L.P., Lloyd Blankfein, Thomas Ferguson, and

---

[1] We note that Graham also filed a complaint in the superior court in BC425995 on November 13, 2009, which he voluntarily dismissed without prejudice on January 5, 2011.

2

Whitehall Street Global Real Estate Limited Partnership 2001 (Goldman Sachs defendants); and Starwood Capital Group, LLC, SOF V1 U.S. Holdings, LLC, Barry S. Sternlicht, National Golf Operating Partnership, David G. Price, and Kimberly Wong (related entity defendants). Some of the corporate and individual defendants were never served.

Graham alleged causes of action in the FAC against all defendants for: (1) violation of the "right of Expression and Speech" under the California Constitution; (2) violation of his fundamental right to work as a golf instructor; (3) violation of his right of equal protection under the California Constitution; (4) violation of the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.); (5) violation of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.); (6) violation of the Bane Act (Civ. Code, § 52.1); (7) public nuisance; (8) "Unfair Competition Law Act," violation of Business and Professions Code section 17200 et seq.; (9) public nuisance; (10) "Unfair Competition Law Act," violation of Business and Professions Code section 17200 et seq.; (11) fraud; and (12) government waste.

Graham alleged "two primary rights at issue": the public's right to golf services at City- and County-owned golf courses not exceeding the actual cost of providing those services, and his right to give golf lessons at these courses. He alleged that defendants acted in concert to waste government resources, restrain and monopolize the golf instruction industry, maintain a public nuisance, invest in golf course management, manage golf courses, and overcharge the public for golf services. Only golf instructors who were employees of American Golf could teach at the City- and County-owned golf courses and there were no golf courses in his local area at which he could teach.

The FAC is 123 pages in length, exclusive of attached exhibits. We thus summarize those portions of the FAC pertinent to this appeal.

Graham alleged that he filed a tort claim against the County on May 3, 2008, which the County rejected on August 29, 2008. Graham further alleged that the County's notice of rejection was served on him on September 11, 2008. He alleged that he filed a

3

tort claim against the City on December 15, 2008, which the City rejected on February 3, 2009.

He also averred that he "filed" a lawsuit in the federal district court for the Central District of California (district court) on March 10, 2009,[2] and that he did so within the six-month deadline required by the Tort Claims Act (Gov. Code, § 900 et seq.). The record reveals that the district court initially refused to file Graham's complaint, which was only lodged on March 10, 2009, as well as a fee waiver request, because Graham had failed to include "a 'short and plain statement' of the claims as required by Fed.R.Civ.P. 8(a)."

The record also reveals that the complaint Graham lodged on March 10, 2009, just within a day or so of the expiration of the Tort Claims Act deadline, was in a federal case (CV09 01684) different from the federal case in which a different complaint was actually filed (CV09 04794) on July 2, 2009, after the six-month deadline had long expired. The July 2, 2009 complaint bears a stamp indicating that Graham paid a filing fee in that case. The record further reveals that the complaints filed in the two different federal cases were not the same. As illustrative only, the complaint filed on July 2, 2009, contains causes of action for public nuisance and fraud and a taxpayer claim under Code of Civil Procedure section 526a[3] that were not in the complaint that Graham lodged in a different case on March 10, 2009, and that the district court rejected for filing.[4]

---

[2] Graham alleged a March 10, 2008 date, which clearly was a typographical error given that a 2008 date would have predated notice of rejection from the County. The record of the lodged complaint in district court confirms that the 2008 date was a typographical error.

[3] Graham alleged violation of Civil Code section 526a, which does not exist. We understand him to be referring to Code of Civil Procedure section 526a.

[4] The record does not reveal what, if anything, further happened in the federal case in which Graham lodged his first federal complaint. The civil docket sheet for that case, of which we take judicial notice (see fn. 5, *post*), does not indicate any further proceedings.

4

On October 16, 2009, the district court in CV09 04794 dismissed Graham's federal claims (asserting First Amendment, equal protection under the Fourteenth Amendment, and federal antitrust claims) and declined to exercise supplemental jurisdiction over state claims that Graham had alleged in the FAC were "essentially the same claims set out in this state court action." On October 29, 2009, Graham filed a notice of appeal in the Ninth Circuit Court of Appeals (Ninth Circuit).[5]

In his "Informal Opening Brief" filed in the Ninth Circuit on April 13, 2010, Graham stated that he was appealing only from the district court's ruling regarding his federal claims: "[T]he district court judge wants the state law claims to be dealt with in the state court forum.[6] **And Graham is fine with that**, and already filed a state court action on the state law claims over which the district court judge declined to exercise supplemental jurisdiction. Indeed, Graham is **not** appealing the district court judge's choice to not exercise supplemental jurisdiction over the state law claims."

On March 7, 2011, Graham filed a "Notice to the 9th Circuit Court of Change in Circumstances Possibly Relevant to the Appeal Decision," dated March 4, 2011, in which he retracted his earlier statement that he was not appealing from the district court's ruling regarding his state law claims. Apparently Graham changed his mind after the superior court stayed Graham's first state court case pending Graham's federal appeal.

On March 4, 2011, the Ninth Circuit affirmed the district court's rulings, although Graham alleges erroneously so.[7] As noted above, Graham filed his complaint in the superior court in the case before us on April 1, 2011.

---

[5] Pursuant to Evidence Code section 452, subdivision (d), we take judicial notice of the records of the district court and Ninth Circuit referenced herein.

[6] Graham was apparently referring to the complaint that he filed in a different superior court case on November 13, 2009, which he voluntarily dismissed on January 5, 2011, without prejudice. (See fn. 1, *ante*.)

[7] We take judicial notice of the Ninth Circuit's docket in Graham's appeal indicating that Graham's efforts to seek rehearing in the Ninth Circuit and his petition for writ of certiorari in the United States Supreme Court were denied.

In the FAC in the current case, Graham alleged a fraud claim against all "the named Defendants." He averred that defendants charged him and the public fees for golf services in excess of 300 percent to 500 percent of the cost of providing those services, in violation of Government Code section 50402, subdivision (a).[8] Defendants knew that they violated Government Code section 50402, subdivision (a) and withheld from the public "the mandate of" Government Code section 50402, subdivision (a) and their price-gouging practices. Defendants intended to defraud Graham and the public in order to make profits.

As proof, he attached as exhibit D documents purportedly demonstrating that the director of parks and recreation for the County reported to the County board of supervisors that Government Code section 50402, subdivision (a) was satisfied as long as the fees charged were in keeping with prevailing market rates. He further alleged that City council members, the director of parks and recreation for the City, and American Golf charged golf fees based on market rates rather than the cost of providing golf services, as required by Government Code section 50402, subdivision (a). Graham and the public were unaware of the mandate of Government Code section 50402, subdivision (a) and reasonably relied on defendants to charge lawful amounts for golf services. Graham was damaged in the amount of "about $5,000" in excess fees, and the public has been damaged in the amount of "many millions of dollars."

Graham asserted alter ego claims against American Golf "as being nothing more than an 'instrumentality' of its parents," which were Goldman Sachs Group, Starwood Capital Group, LLC, Goldman Sachs Group's GS Capital Partners 2000 L.P., Goldman Sachs Group's Whitehall Street Global Real Estate Limited Partnership 2001, Starwood

---

[8] Government Code section 50402, subdivision (a) provides: "(a) A city, county, or city and county owning property or leasing property which is devoted to park, amusement, or recreational purposes may make a charge for use or services provided therein in the amount as may be provided by resolution by the governing body. No charge shall be imposed which exceeds the cost of the service provided. To the extent feasible, charges for similar uses or services imposed by a governing body pursuant to this section shall be uniform throughout its area of jurisdiction."

6

Capital Group's SOF VI U.S. Holdings, LLC, and National Golf Operating Partnership. According to the FAC, American Golf was registered as a corporation in the State of California, maintained headquarters in Santa Monica, and had its own corporate officers separate from the Goldman Sachs defendants. The FAC alleged that the Goldman Sachs defendants "use[d] [American Golf] as an 'instrumentality,' which it clearly is, and to facilitate and perpetrate such unlawful, corrupt, and deceitful activities as the scheme described in this Complaint." American Golf "is without hard assets, and without cash, and sends all its profits . . . right back to its parents." "There is a unity of interest and ownership between [American Golf] and its parents such that the separate personalities . . . do not truly exist."

Graham prayed for actual and punitive damages, "restitutionary disgorgement," declaratory relief, injunctive relief, and costs of suit and attorney fees.

**The demurrers to the FAC**

On August 26, 2011, the Goldman Sachs defendants demurred to all 12 causes of action.[9] So did American Golf. The City defendants and the County defendants also demurred to all 12 causes of action. The related entity defendants filed a joinder to the Goldman Sachs demurrer. Judge Lavin heard the demurrers on January 9, 2012, and issued his rulings on January 23, 2012.

Graham sought judicial notice of several documents. Pertinent to this appeal, Judge Lavin denied Graham's request for judicial notice as to Graham's exhibit H. Exhibit H was the County's notice of rejection of Graham's tort claims. Exhibit H included a copy of a letter from the County dated September 3, 2008, informing Graham that his claim filed on May 3, 2008, was rejected. It also included copies of a declaration of service by mail indicating that the notice of denial of claim was mailed on September 4, 2008, to a street number address of "547" as well as an envelope addressed to the same street number with a "return to sender" postal sticker on it. Exhibit H also

_____

[9] According to the demurrer, one of the Goldman Sachs defendants, Whitehall Street Global Real Estate Limited Partnership 2001, was never served, but the demurrer applied with equal force to it.

7

included copies of a declaration of service by mail indicating that the notice of denial of claim was mailed on September 11, 2008, to a street number address of "5447."

On January 23, 2012, Judge Lavin sustained American Golf's demurrer without leave to amend as to the 10th (unfair competition) and 12th (government waste)[10] causes of action for failure to state a claim because they "may not be asserted against a private entity." He sustained the demurrer with leave to amend as to the 11th (fraud) cause of action. Judge Lavin stated that Graham failed to plead his fraud claim "with the required specificity or failed to allege justifiable reliance." Judge Lavin overruled the demurrer as to the remaining causes of action against American Golf because the moving party had "not addressed certain aspects of the claims," "the claims were not resolved in the prior federal court litigation, or the claims may not be resolved at this stage of the litigation."

Judge Lavin sustained the Goldman Sachs defendants' demurrer in its entirety, with 10 days' leave to amend, for failure to state a viable legal theory and because the alter ego allegations were "conclusory."

Judge Lavin sustained the County defendants' demurrer without leave to amend as to the fifth (violation of the Cartwright Act), eighth (unfair competition), and 10th (unfair competition) causes of action on the basis of immunity. He sustained the County defendants' demurrer with 10 days' leave to amend as to the remaining causes of action. The order stated, "According to paragraph 148 in the FAC, the County rejected Plaintiff's claim on May 3, 2008. The federal lawsuit was not filed until July 2, 2009, or more than six months after his claim was rejected. Thus, even if the filing of the federal lawsuit tolled the statute of limitations for filing this state court lawsuit, Plaintiff's claims as to these defendants are time-barred. To the extent that Plaintiff is relying on a different date for presentation of his claim to the County, leave to amend is granted."

---

[10] Graham disclaims appealing from Judge Lavin's ruling as to the 8th (unfair competition), 10th (unfair competition), and 12th (government waste) causes of action, but instead "reserve[d]" his appeal as to those claims for "later in time." We therefore do not address these causes of action.

8

Judge Lavin also sustained the City defendants' demurrer without leave to amend as to the fifth (violation of the Cartwright Act), eighth (unfair competition) and 10th (unfair competition) causes of action on the basis of immunity. He sustained the City defendants' demurrer with 10 days' leave to amend as to the 11th (fraud) cause of action for failure to plead fraud with specificity and to plead justifiable reliance. The trial court overruled the City defendants' demurrer as to the remaining causes of action because the claims were not "time-barred or the Court cannot determine at this time whether they should have been presented to the City of Long Beach at an earlier time." Finally, Judge Lavin sustained the related defendants' demurrer with 10 days' leave to amend.

Graham did not file an amended complaint. On February 14, 2012, American Golf filed a notice of ruling of Judge Lavin's demurrer rulings.

Thus, the first, second, third, fourth, fifth, sixth, seventh, eighth, and ninth causes of action remained as to American Golf and its officers. The first, second, third, fourth, sixth, seventh, ninth, and 12th causes of action remained as to the City defendants.

**The April 2 and May 11, 2012 appeals**

On April 2, 2012, Graham filed a notice of appeal from a "[j]udgment of dismissal after an order sustaining a demurrer" that was "entered on . . . January 23, 2012." On April 13, 2012, the trial court filed a judgment of dismissal with respect to the claims against the Goldman Sachs and related entity defendants, as well as the County defendants on the basis that the time to amend had expired without Graham's having filed an amended complaint. Graham filed a notice of appeal as to the April 13, 2012 judgment of dismissal on May 11, 2012.

On May 25, 2012, the American Golf defendants and the City defendants filed a verified answer to the remaining claims.

**The summary judgment motions**

*American Golf's motion for summary judgment*

American Golf filed a motion for summary judgment on July 2, 2012. American Golf argued that the following causes of action failed as a matter of law. The first cause of action for violation of right of expression and speech failed because American Golf's

policy relating to golf instruction services was reasonable and viewpoint neutral. The second cause of action for violation of the alleged fundamental right to work failed because no such right exists and American Golf had not prevented Graham from working as a golf instructor in the City. The third cause of action for violation of equal protection failed because Graham's rights under the equal protection and privileges and immunities clauses had not been violated. The fourth cause of action for violation of the unfair practices law failed because American Golf did not have a monopoly over the golf instruction industry in the City. The fifth cause of action for violation of the Cartwright Act failed because there was no evidence that American Golf acted in concert with a separate and independent entity to restrain trade. The seventh cause of action for public nuisance failed because the alleged conduct did not constitute a nuisance, California statutes authorized American Golf's conduct, and Government Code section 50402 did not apply to American Golf. The eighth cause of action for violation of the unfair competition law failed because it was based on the same legal duties underlying Graham's deficient predicate claims of anticompetition in the golf lesson market. The ninth cause of action for public nuisance failed because Graham had not suffered an injury different in kind from any injury to the general public, the alleged conduct did not constitute a nuisance, California statutes authorized American Golf's conduct, and Government Code section 50402 did not apply to American Golf.

In addition, American Golf argued that the sixth cause of action for violation of the Bane Act failed because there was no evidence that American Golf coerced or interfered with Graham's alleged legal rights independent from the deprivation of his alleged legal rights.

Graham did not file an opposition to the motion for summary judgment.

On September 12, 2012, Judge Meiers granted American Golf's motion in its entirety for the reasons stated in its motion and ordered American Golf to prepare a written order reflecting the bases asserted in the moving papers. American Golf prepared the order, which was signed and filed on September 25, 2012.

10

*The City defendants' motion for summary judgment*

The City defendants filed a motion for summary judgment on July 2, 2012. The grounds were similar to those in American Golf's motion.

The first cause of action for violation of the right of expression and speech failed because American Golf's policy relating to golf instruction services was reasonable and viewpoint neutral. The second cause of action for violation of the fundamental right to work failed because of the absence of any such right. The third cause of action for violation of equal protection failed because American Golf's policy relating to golf instruction services was reasonable and viewpoint neutral. The fourth cause of action for violation of the unfair practices law failed because it was based on the same legal duties underlying Graham's deficient predicate claims. The sixth cause of action for violation of the Bane Act failed because Graham could not establish a violation of his rights under the California Constitution and the City defendants were immune from liability under Government Code section 520.6. The seventh cause of action for public nuisance failed because the City defendants' conduct was authorized by law, Graham lacked standing to assert a claim for public nuisance, and the alleged conduct did not constitute a nuisance. The ninth cause of action for public nuisance failed because the City defendants' conduct was authorized by law, Graham lacked standing to assert a claim for public nuisance, and the alleged conduct did not constitute a nuisance. The 12th cause of action for government waste failed because Graham lacked standing, the City had discretion to lease the golf courses under the doctrine of separation of powers, and there was no gift of public funds.

The City defendants also argued that Graham's claim for punitive damages was subject to summary adjudication because the City was immune from punitive damages.

On September 12, 2012, Judge Meiers granted the City defendants' motion in its entirety for the reasons stated in the motion and ordered the City defendants to prepare a written order reflecting her rulings based on the arguments in the moving papers. The City defendants prepared the order, which was signed and filed on September 25, 2012.

11

**Judge Meiers's sua sponte motions**

On August 31, 2012, Judge Meiers made a sua sponte motion for judgment on the pleadings and a motion to strike irrelevant, false, or improper matter pursuant to Code of Civil Procedure sections 438 and 436, respectively. The court stated: "[U]nder [Code of Civil Procedure section] 438, the court is of the tentative view that the entire complaint ought possibly to be dismissed for failure to state a cause of action as to any defendant. . . . If the motions for summary judgment are granted, there would seem to be little purpose in having additional 'Doe' defendants still remaining or other defendants who have been named but not yet appeared in the case additionally subject in the future to responding to the existing complaint only to have to re-litigate issues which have already been adjudicated with respect to the plaintiff's claims and tested by other defendants." She set a briefing schedule on these motions and set the hearing for September 12, 2012, the same date as the continued hearing date for Graham's stay motion discussed below.

On September 12, 2012, Judge Meiers granted judgment on the pleadings "as to all defendants and all causes of action not yet dismissed or the subject already of summary adjudication/judgment including, but not limited to all Does, all unserved and served defendants, all who have answered and all who have not yet answered." (Final judgment entered on March 13, 2013.)[11] Judge Meiers observed that if she granted the judgment on the pleadings as to "all the Does and the unserved parties," the appeals could be "consolidated and heard at one time." She granted the judgment on the pleadings "based on all the law and arguments cited in the previously filed demurrers as well as all of the law cited in the Summary Judgment/Adjudication Motions."

**Graham's application for a stay**

On August 13, 2012, Graham filed an ex parte application for a stay for additional time to oppose the motions for summary judgment. His application was based on the

---

[11] We note that the final judgment is not in the record. On our own motion, we take judicial notice of that document in the superior court's file. (Evid. Code, § 452.)

12

volume of the two summary judgment motions and his "interlocutory" appeals of the January 23, 2012 and April 13, 2012 judgments of dismissal.

On August 31, 2012, Judge Meiers continued the hearing on Graham's stay motion to September 12, 2012. She stated: "Plaintiff's motion to stay this case to await the outcome of pending appeals remains under submission and will be ruled upon on September 12, 2012 when many other matters are before the court for hearing. Plaintiff remains expected to file all papers due from plaintiff in a timely manner in light of the court's earlier tentative to deny the stay motion and in light of the fact that no stay has . . . been ordered. [¶] In addition, if there is no stay ordered, the court will be ruling on summary judgment/adjudication motions on that date."

On September 5, 2012, Graham filed a petition for a writ of supersedeas requesting a stay, which we denied on September 13, 2012.

On September 12, 2012, Judge Meiers denied Graham's motion for a stay, stating: "[T]he parties are not all tied together in such a way that any decision on another defendant's effort to get out of the case would in any way affect the posture of appeals with regard to another group of defendants who have issues of demurrers, or dismissals for failure to serve." With respect to the denial of Graham's motion for a stay, Judge Meiers also observed that if she granted the two motions for summary judgment, the appeals could be consolidated and heard at one time.

On November 7, 2012, Graham filed a notice of appeal from the entry of the summary judgment. That judgment, however, was entered only on March 13, 2013.[12] On March 5, 2013, we consolidated the appeals filed on April 2, 2012, May 11, 2012, and November 7, 2012.

---

[12] We take judicial notice of the entry of judgment on March 13, 2013, in the superior court's file. We treat Graham's November 7, 2012 notice of appeal as a valid premature notice of appeal. (Cal. Rules of Court, rule 8.104 (d) [notice of appeal filed after judgment rendered but before entered is valid and treated as filed immediately after entry of judgment]; *First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958–959.)

13

**Proceedings after oral argument**

After oral argument, we requested briefing pursuant to Government Code section 68081 on whether Graham's lodging of a complaint in the district court on March 10, 2009, tolled the running of the six-month deadline for filing his claim under the Tort Claims Act even though Graham's complaint was formally filed only on July 2, 2009, which was after the latter deadline had expired. We also asked for briefing on tolling, if any, under 28 United States Code section 1367(d). We received Graham's and defendants' responses on March 30, 2015.

## DISCUSSION

**Graham must demonstrate error on appeal**

An appellant's responsibility on appeal is to demonstrate error and support his or her argument by citation to the record and to applicable legal authority. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.) We examine Graham's arguments, keeping in mind the appellate principle that we are not required to review undeveloped claims or to make arguments for the parties. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) When a brief fails to contain legal argument with citation of the applicable authorities, we may treat the argument as waived. (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948.) Similarly, a party's failure to support an argument with the necessary citations to the record results in waiver of the argument. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) A self-represented party is subject to the same rules as a party who is represented by counsel. (*City of Los Angeles v. Glair* (2007) 153 Cal.App.4th 813, 819.)

**Judge Meiers properly found that the remaining proceedings should not be stayed**

We reject Graham's contention that an automatic stay prevented Judge Meiers from hearing the motions for summary judgment. Graham claims that because he filed a notice of appeal as to the order dismissing the Goldman Sachs defendants and the County defendants, he was entitled to an automatic stay of all proceedings still in the trial court under Code of Civil Procedure section 916, subdivision (a).

14

While "[a]n order sustaining a demurrer is usually not immediately appealable, because it is not on its face a final judgment . . . it may be treated as a judgment for purposes of appeal when, like a formal judgment, it disposes of the action and precludes further proceedings." (*Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1098 (*Thaler*).)

On April 2, 2012, Graham filed a notice of appeal from a "[j]udgment of dismissal after an order sustaining a demurrer" that was "entered on . . . January 23, 2012." On April 13, 2012, the trial court filed an order of dismissal against the Goldman Sachs defendants and the County defendants. They were the only parties against whom Graham could have pursued an appeal at that time because the demurrer rulings eliminated all of Graham's claims against those parties. (*Thaler*, *supra*, 80 Cal.App.4th at p. 1098.) To the extent Graham may have been attempting to file a notice of appeal from that part of the order sustaining the demurrers of the American Golf defendants and the City defendants, such an appeal would have been premature because there were claims remaining in the trial court as to those defendants. (*Ibid*.)

Code of Civil Procedure section 916, subdivision (a) provides in pertinent part that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

"'[W]hether a matter is "embraced" in or "affected" by a judgment [or order] within the meaning of [section 916] depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the "effectiveness" of the appeal.' [Citation.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.) "'The purpose of the automatic stay rule is "to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it."' [Citation.]" (*Chapala Management Corp. v.*

*Stanton* (2010) 186 Cal.App.4th 1532, 1542.)  Our focus thus is on whether allowing the remaining claims to proceed in the trial court would have affected the appeals.[13]

We assume, without deciding, that our review is de novo because whether the automatic stay in Code of Civil Procedure section 916, subdivision (a) applied to the proceedings remaining in the trial court affected the trial court's jurisdiction to proceed.

Here, after the dismissal of the Goldman Sachs defendants and the County defendants, the remaining appearing defendants were the City and the American Golf defendants.  Graham has not articulated how the proceedings against the City and American Golf in the trial court would have affected the appeals.  As an appellant, it is Graham's burden to do so or forfeit his argument.  We fail to discern how the alter ego and other issues on appeal from Judge Lavin's demurrer rulings would have been impacted by the proceedings then pending before Judge Meiers, and Graham has not carried his burden to demonstrate otherwise.

To the extent Graham argues that Judge Meiers abused her discretion in denying his ex parte application for temporary stay, we disagree.  Code of Civil Procedure section 918, subdivision (a) gives the trial court discretionary power to stay the enforcement of any judgment or order, subject to certain restrictions not pertinent here.  (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 482.)  On August 13, 2012, Graham filed an ex parte application for a stay for additional time to oppose the motions for summary judgment on the grounds that the summary judgment motions were "massive," his appeals from Judge Lavin's rulings were pending, and Judge Meiers should reconsider "sua sponte" Judge Lavin's demurrer rulings.

On September 12, 2012, Judge Meiers denied Graham's motion for a stay, concluding that the parties were not "all tied together in such a way" that any decision

---

[13] For example, in *Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, the Supreme Court determined that the trial court had continuing jurisdiction over a matter and properly extended an injunction restraining the defendants from foreclosing their deed of trust where the plaintiff appealed from only a portion of a judgment cutting the purchase price of the property in half.  (*Id.* at p. 787.)

would affect the appeals with regard to the dismissals. She also observed that Graham had failed to oppose the summary judgment motions even though he had filed "maybe two hundred pages in support of request[s] for continuances." We conclude that Judge Meiers did not abuse her discretion in denying Graham's motion for a stay. (Code Civ. Proc., § 918, subd. (a) [trial court "may" stay enforcement of judgment or order]; *City of Hollister v. Monterey Ins. Co.*, *supra*, 165 Cal.App.4th at p. 482.)

**The trial court did not err in sustaining the demurrers to the fraud cause of action**

Graham contends the trial court erred in sustaining the demurrers with leave to amend the 11th cause of action for fraud because he (1) pleaded his fraud claim with sufficient specificity; (2) properly alleged justifiable reliance; and (3) was guaranteed a jury trial on his fraud claim under article 1, section 16 of the California Constitution.

"When a plaintiff elects not to amend after the court sustains a demurrer with leave to amend, we assume the complaint states as strong a case as possible, and we will affirm the judgment if the unamended complaint is objectionable on any ground raised by the demurrer. [Citation.]" (*Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 981.) Here, Graham did not amend the FAC after the demurrer was sustained with leave to amend as to the fraud cause of action.

We examine the allegations of the FAC with the following guidelines in mind. The elements of fraudulent misrepresentation are: "'"(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false . . . ; (4) the defendant intended the plaintiff to rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff."'" (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 605–606 (*Graham*).)

The elements of fraudulent concealment are: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the

fact; (4) the plaintiff was unaware of the fact and would not have acted . . . know[ing] of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." (*Graham*, *supra*, 226 Cal.App.4th at p. 606.)

Fraud must be pleaded with specificity. The policy of liberal construction of pleadings will not save defective fraud allegations. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184.) The complaint must plead facts which """'show how, when, where, to whom, and by what means the representations were tendered.'"" [Citation.]" (*Ibid.*)

*Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772 (*Goldrich*) offers guidance. In that case, we affirmed the trial court's demurrer to a second amended complaint that merely alleged in conclusory fashion that the defendants falsely represented to the plaintiff, physicians, and the public that the defendants' breast implants were safe. We concluded that the plaintiff failed to present any facts supporting a claim of fraud; the conclusory allegations offered no facts; and it was impossible to determine what was said or by whom, or whether statements were made in writing or orally. (*Id.* at p. 783.)

Here, the FAC's allegation that the defendants misrepresented to Graham that the golf fees were lawful and the allegation that the golf fees were 300 percent to 500 percent of the cost of providing services were vague and conclusory, and not fact-based. As in *Goldrich*, *supra*, 25 Cal.App.4th 772, Graham did not allege """"how, when, where, to whom, and by what means the representations were tendered.""" (*Small v. Fritz Companies, Inc.*, *supra*, 30 Cal.4th at p. 184.)

Further, Graham alleges misrepresentations were made at golf courses and "within the resolutions" passed by the City and the County "where they daringly tell the public they are raising the fees for golf services in accordance with Government Code section 50402, subdivision (a)." Graham's allegation that he justifiably relied on this alleged misrepresentation because defendants concealed the mandate of Government Code section 50402, subdivision (a) is inconsistent with the allegation that Graham learned of

18

the mandate of Government Code section 50402, subdivision (a)—a statute which is available to the public—by doing legal research.

The exhibits attached to the FAC also demonstrate that the setting of public golf fees was not hidden from the public. Exhibit D to the FAC, regarding "approval of department of parks and recreation: revised golf course greens fees (all districts) (3 votes)," stated that the setting of the public golf fees is subject to the public hearing notice requirements of Government Code sections 6062a (publication of notice shall be for 10 days in a newspaper) and 66018 (public hearing requirements). That same exhibit recites that "[i]n accordance with Section 50402 of the Government Code, these changes must be approved by a resolution of your Board."

Finally, Graham's assertions that he was somehow deprived of his constitutional right to a jury trial because the trial court sustained the demurrer is not supported by legal argument. (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1006–1007.) We observe that, generally speaking, when a trial court sustains a demurrer, the court has determined that the allegations of facts are not sufficient to state a cause of action under any legal theory, assuming all alleged facts to be true, and thus there would be no factfinding role for the jury. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

**The trial court did not err in determining that Graham's alter ego allegations were legally deficient**

Graham contends that the trial court erred in determining the alter ego allegations with respect to the Goldman Sachs defendants were insufficiently alleged because (1) the FAC specifically alleged a unity of interest between the Goldman Sachs defendants and American Golf, (2) the FAC alleged an injustice would result if an alter ego relationship were not found; (3) the issue of alter ego liability was a question of fact for the jury to decide; and (4) if the jury chose not to pierce the corporate veil, the doctrine of agency or respondeat superior would apply.

"Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an injustice to a third person. [Citation.] To prevail on a claim of 'alter ego,' the third party must show (1) there is such a unity of interest that the separate

19

personalities of the corporations no longer exist; and (2) inequitable results will follow if the corporate separateness is respected." (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1285.) Facts such as inadequate capitalization, commingling of assets, and disregard of corporate formalities must be established to demonstrate the fundamental element of alter ego liability: whether respecting the separate status of the corporations would produce an inequitable result. (*Ibid.*)

"To justify piercing the corporate veil on an alter ego theory in order to hold a parent corporation liable for the acts or omissions of its subsidiary, a plaintiff must show . . . 'specific manipulative conduct' by the parent toward the subsidiary which 'relegate[s] the latter to the status of merely an instrumentality, agency, conduit or adjunct of the former . . . .'" (*Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 742, overruled on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 524.)

We conclude that the allegations of the FAC were merely conclusory and not fact-based. "A complaint must set forth the facts with sufficient precision to put the defendant on notice about what the plaintiff is complaining and what remedies are being sought." (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 415 (*Leek*).) "An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity." (*Ibid.*) In *Leek*, the allegations that the defendant was the owner of a Honda dealership and owned its stock and made all the business decisions, and that other codefendants were agents and employees of each other "neither specifically alleged alter ego liability, nor alleged facts showing a unity of interest and inequitable result from treatment of the corporation as the sole actor." (*Ibid.*)

Graham did not specifically allege facts showing a unity of interest between American Golf and the Goldman Sachs defendants or an inequitable result if corporate separateness were disregarded. Graham did not allege that American Golf disregarded corporate formalities. To the contrary, Graham alleged that American Golf observed corporate formalities in that it was registered as a corporation in the state of California, maintained headquarters in Santa Monica, and had its own corporate officers separate from the Goldman Sachs defendants. The FAC also did not contain specific factual

20

allegations demonstrating that American Golf was a mere instrumentality of the Goldman Sachs defendants, or supporting an inference of manipulation of the corporate structure by the Goldman Sachs defendants. Further, Graham failed to allege specifically any scheme, transfers of profits, or fraud.

Fatal to Graham's alter ego claims was his failure to allege with specificity that an inequitable result would follow if American Golf were treated as a defendant separate from the Goldman Sachs defendants. Graham merely alleged that a finding against American Golf could potentially bankrupt American Golf and allow the Goldman Sachs defendants to "avoid disgorgement of the millions and millions of dollars of unlawfully acquired monies sent to them by [American Golf] over years." Difficulty in enforcing a judgment if the corporate veil is not pierced does not, by itself, satisfy the element of an inequitable result. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 539.)

Further, because the allegations in a complaint regarding alter ego are properly subject to a demurrer (*Leek*, *supra*, 194 Cal.App.4th at p. 415), we do not agree with Graham's argument that the jury should be able to decide whether or not the corporate veil should be pierced. Furthermore, there is no right to a jury trial for alter ego claims because they are equitable in nature. (*Dow Jones Co. v. Avenel* (1984) 151 Cal.App.3d 144, 147–148.)

Graham argues that the law of agency and the doctrine of respondeat superior would apply if the jury chose not to pierce the corporate veil. The focus on appeal is whether the trial court erred in making its rulings, specifically its ruling that Graham's alter ego allegations were insufficient. Graham's reference to general rules regarding the liability of an agent and the doctrine of respondeat superior does not rescue his inadequate alter ego allegations.

**Graham's claims against the County defendants subject to the Tort Claims Act were untimely although not on the ground asserted by the trial court**

Graham contends that the trial court erred in dismissing claims subject to the Tort Claims Act against the County because the trial court (1) incorrectly found that the

21

County had rejected his tort claims on May 3, 2008, when the County actually rejected those claims on August 29, 2008; (2) failed to take judicial notice of exhibit H attached to the FAC, which demonstrated that he was served with that rejection on September 11, 2008; (3) failed to recognize that Graham's federal complaint was constructively filed within the Tort Claims Act deadline; and (4) erred in applying the Tort Claims Act at all because Graham's prayer for money damages was merely incidental to his prayer for injunctive relief, which Graham asserts is the main form of relief he is seeking in this case.

### *Graham's complaint against the County defendants was not timely filed under the Tort Claims Act (Gov. Code, § 900 et seq.)*

Graham contends that the trial court erred in finding that the County rejected his claims on May 3, 2008. In fact, as alleged in the FAC, they were rejected on August 29, 2008, and that rejection was served on him only on September 11, 2008, and not the September 4, 2008 date advocated in the County's demurrer. The trial court compounded its error by not crediting his lodging of his federal complaint on March 10, 2009, in finding that the federal complaint was filed only on July 2, 2009.[14]

More specifically, Graham contends that under the doctrine of constructive filing, although he paid his filing fees in his federal case only on July 2, 2009, at which time his federal complaint was stamped "filed," that file-stamped date related back to the date of his lodging of the federal complaint for purposes of satisfying the six-month deadline under the Tort Claims Act. He also contends that his complaint in the current action was timely filed because of tolling under 28 United States Code section 1367(d) during the time he was pursuing his federal case.

A plaintiff cannot sue a public entity in court without first presenting his or her tort claim to the public entity within six months of accrual of the claim. (Gov. Code, § 911.2, subd. (a); *K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229,

---

[14] Graham does not challenge on appeal the trial court's ruling that he did not timely present his tort claims to the City. We therefore do not address this issue.

1238.)  If the public entity rejects the tort claim, the plaintiff must commence his or her lawsuit within six months of notice by personal or mail service of the public entity's rejection of the claim.  (Gov. Code, § 945.6, subd. (a)(1); *K.J.*, at p. 1238.)

Graham contends that the trial court erred in refusing to take judicial notice under Evidence Code section 452[15] of exhibit H to the FAC, which demonstrated that the County sent him notice of its rejection of his tort claims only on September 11, 2008.[16] We need not reach the issue of whether the trial court erred in refusing to take judicial notice of exhibit H because Graham alleged in the FAC that the County served Graham with the rejection notice on September 11, 2008.  (*Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 349 [for purposes of ruling on a demurrer, facts pleaded in the complaint are assumed to be true].)  Defendants themselves rely on exhibit H in their opposition brief despite their seeming objection to that exhibit.

Graham asserts that because the lodging of his federal complaint on March 10, 2009, was within the six-month deadline imposed by the Tort Claims Act, albeit barely, it was of no consequence that the complaint was deemed filed only on July 2, 2009.  He relies on the doctrine of constructive filing recognized by the Third Circuit in *McDowell v. Delaware State Police* (3d Cir. 1996) 88 F.3d 188 for this proposition.

Under rule 3 of the Federal Rules of Civil Procedure (28 U.S.C.), "[a] civil action is commenced by *filing* a complaint with the court."  (Italics added.)  The Ninth Circuit has recognized that a limitations period can be satisfied by the lodging of a complaint within the limitations deadline even if, because of noncompliance with a local rule, the

---

[15] Evidence Code section 452 permits a court to take judicial notice of, among other things, state decisional, constitutional, and statutory laws; regulations issued by public entities; official acts of state legislative, executive, and judicial departments; court records; court rules; laws of nations; and facts and propositions not reasonably subject to dispute and capable of accurate determination by resort to reasonably indisputable sources.  (Evid. Code, § 452, subds. (a)–(g).)

[16] Defendants claim that the notice of rejection was actually mailed to Graham on September 4, 2008, but as noted *ante*, our review of exhibit H shows that the September 4, 2008 notice was mailed to the wrong address and was returned to sender.

23

complaint was not formally filed until after expiration of the limitation period. Thus, in *U.S. v. Dae Rim Fishery Co.* (9th Cir. 1986) 794 F.2d 1392, the Ninth Circuit held that a complaint was "constructively filed" by putting it in the possession of the custody of the clerk, "despite any subsequent rejection by him of the pleading for noncompliance with a provision of the local rules." (*Id*. at p. 1395.) To do otherwise would "conflict with the mandate of Federal Rule of Civil Procedure 1 to provide a just and speedy determination of every action." (*Ibid.*)

Similarly, in *Cintron v. Union Pacific R. Co*. (9th Cir. 1987) 813 F.2d 917, the Ninth Circuit held that the district court erred in dismissing a complaint that had been rejected by the clerk for noncompliance with local rules regarding format and for overpayment of the filing fee causing the complaint to be resubmitted in the correct format and with the correct fee after the statute of limitations had expired. (*Id.* at p. 921.)

The trouble with Graham's argument is that as detailed *ante*, the complaint he lodged on March 10, 2009, is not the same one that he filed on July 2, 2009, not to mention that Graham filed them in two different district court cases. Graham has not cited any case that would relate a filing deadline back to a different case and a different complaint under the doctrine of constructive filing. It is an appellant's responsibility to provide the appellate court with applicable case authority to support an argument, and a failure to do so constitutes a forfeiture of that argument. (*Ellenberger v. Espinosa*, *supra*, 30 Cal.App.4th at p. 948.)

In addition, even if, arguendo, Graham's second federal complaint could be related back to the date of lodging of his first federal complaint, he did not timely file the complaint in the superior court case before us. Graham argues that 28 United States Code section 1367(d) tolled any running of the Tort Claims Act deadline for the time during which his case was pending in federal court and on appeal in the Ninth Circuit and added an additional 30 days for him to file his state law claims in the superior court.

Section 1367(d) of title 28 of the United States Code provides in pertinent part: "The period of limitations for [a claim eligible for supplemental jurisdiction that is dismissed] shall be tolled while the claim is pending and for a period of 30 days after it is

24

dismissed unless State law provides for a longer tolling period." As the Supreme Court recognized in *City of Los Angeles v. County of Kern* (2014) 59 Cal.4th 618, this provision tolls the running of a limitations period while supplemental state claims are pending in federal court. (*Id.* at p. 630.) It also gives litigants a "grace period" within which to file claims in state court once the federal court has refused to exercise supplemental jurisdiction over the state law claims: "If a cause of action would be lost, or have only scant days or weeks remaining on the clock when dismissal occurs, parties are assured an opportunity to proceed in state court, provided they act diligently." (*Ibid.*)

The problem here is that although Graham filed a notice of appeal on October 29, 2009, at that time Graham eschewed appealing from the district court's dismissal of his state law claims. It was only on March 7, 2011, when he filed his "Notice to the 9th Circuit Court of Change in Circumstances Possibly Relevant to the Appeal Decision" that he notified the Ninth Circuit that he wanted the appellate court to consider his state law claims. This was after the Ninth Circuit had issued its decision on Graham's appeal on March 4, 2011, and after Graham dismissed his first state complaint on January 5, 2011. It appears to us that there was no tolling of the Tort Claims Act deadline under 28 United States Code section 1367(d) during the time Graham's appeal was filed and decided. Graham filed his complaint in superior court in the case before us on April 1, 2011, which was beyond any 30-day grace period set forth in 28 United States Code section 1367(d), where there was no tolling from October 29, 2009, through March 7, 2011, even assuming that the constructive filing doctrine applied to Graham's multiple federal complaints.[17]

### *Graham was not exempt from filing a tort claim*

Graham argues that because injunctive relief was the main form of relief he is seeking in the FAC, he was not required to file a tort claim with the County. Although

---

[17] Because we find that Graham has not demonstrated why the constructive filing doctrine would apply to his federal complaints, we do not address defendants' argument in their March 30, 2015 letter brief that 28 United States Code section 1367(d) cannot "trump" the Tort Claim Act's filing deadline.

Graham has raised this argument for the first time only on appeal, we address his argument because it involves a question of law on undisputed facts. (*McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612, 618.)

The filing requirements of the Tort Claims Act apply to actions for money damages. (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079 (*Loehr*).) "Although this term is not defined in the act, it is comprehensive in scope and includes tort claims arising out of negligence, nuisance, breach of statutory duties, and intentional wrongs. [Citation.]" (*Ibid.*) When a complaint contains a claim for injunctive relief that is incidental to a plaintiff's claims for damages, the requirements of the Tort Claims Act still apply. (*Loehr*, at p. 1081 [plaintiff's causes of action were aimed at recovering monetary damages for loss of future earnings, emotional and mental distress, pain and suffering; two causes of action seeking injunctive relief were incidental to prayer for damages].)

The trial court sustained the County's demurrer as untimely with respect to Graham's causes of action for (1) violation of the "right of Expression and Speech"; (2) violation of fundamental right to work as a golf instructor; (3) violation of right of equal protection; (4) violation of the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.); (6) violation of the Bane Act (Civ. Code, § 52.1); (7) public nuisance; (9) public nuisance; (11) fraud; and (12) government waste.

Our review of those causes of action reveals that they are aimed at recovering monetary damages and that Graham's prayer for injunctive relief is merely incidental to those money damages claims. As detailed *ante*, his prayer for relief included actual damages, "Restitutionary disgorgement," exemplary damages, nominal damages, "trebling" of actual damages, costs of suit, and attorney fees for violation of his primary rights. As we observed above, Graham himself alleges that his FAC centered around "two primary rights"—Graham's and the public's right to golf services not exceeding the actual cost of the services and Graham's right to give golf lessons. Thus, the main object of the FAC is recovery of what Graham contended to be "hundreds-of-millions of dollars" in overcharged fees for golf services, among other monetary relief.

26

That recovery of monetary damages was Graham's main goal is further underscored by his allegations that piercing the corporate veil was necessary because American Golf may not have the funds necessary to pay for a judgment in this case.

### *The purported hold harmless clauses*

Graham contends that unspecified hold harmless clauses in the County's contracts with American Golf would require American Golf to indemnify the County. From this premise, he concludes that his claims do not involve money damages against the County.

Graham does not allege any such agreement in the FAC other than to allege that American Golf provided a free legal defense to the County. Graham has failed to cite to any legal support for the premise of his argument, to wit, that the existence of an indemnity right negates having to comply with the Tort Claims Act. That an action is for money damages is what triggers compliance with the Tort Claims Act, and not whether monetary damages are ultimately recoverable or how a judgment in such an action would ultimately be funded. (*Loehr*, *supra*, 147 Cal.App.3d at p. 1081.) Finally, Graham did not raise this argument in his opposition to the County's demurrer, and thus he forfeited the argument on appeal.

## Graham failed to demonstrate that the trial court erred in applying the immunity doctrine to Graham's claims

Graham argues that "[t]he business partnership of [American Golf] and its owners with the County and City as established by the golf course property management agreements, or so-called 'leases,' establish an illegal proprietary undertaking for which there is no immunity for any Defendant party." (Boldface omitted.) Judge Lavin sustained the County defendants' and City defendants' demurrer to the fifth, eight, and 10th causes of action "on the basis of immunity." As previously noted *ante* at footnote 10 of this opinion, Graham disclaims appealing from Judge Lavin's ruling as to the eighth and 10th causes of action regarding violation of Business and Professions Code section 17200 et seq. We thus address Graham's argument only with respect to his fifth cause of action for violation of the Cartwright Act.

27

Graham relies principally on *People ex rel. Freitas v. City and County of San Francisco* (1979) 92 Cal.App.3d 913 (*Freitas*) for the proposition that defendants had a proprietary relationship with American Golf and therefore were not immune from liability under the Cartwright Act. *Freitas* does not support Graham's position. Indeed, the *Freitas* court held that the City of San Francisco was immune from the Cartwright claims in that case. (*Freitas*, *supra*, 92 Cal.App.3d at pp. 921, 925.) Graham also relies on *Board of Trustees v. City of Los Angeles* (1975) 49 Cal.App.3d 45 (*Board of Trustees*) and *Guidi v. State of California* (1953) 41 Cal.2d 623 (*Guidi*). Neither case is apt.

In *Board of Trustees*, a state university brought a declaratory relief action asserting that a local permitting regulation could not be applied to a circus that leased the university's real property. Division Two of our appellate district held that the city's permitting ordinance was not preempted and could be applied to the circus-lessee. "The question here then is whether the state has preempted the field of regulating the type of activity in which the board's lessee was engaged, or whether the regulation of private persons engaged in such activity on the board's land impinges upon the sovereignty of the state. We conclude that both questions must be answered in the negative and resolved in favor of the city's power to enforce its ordinance against the board's lessees." (*Board of Trustees*, *supra*, 49 Cal.App.3d at p. 49.) *Board of Trustees* did not address the Cartwright Act or the filing deadline in the Tort Claims Act. *Guidi* does not assist Graham either because even assuming arguendo that violation of the Cartwright Act were a tort, *Guidi* was "effectively overruled in the tort context." (*Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1357, fn. 7, citing *Great Western Shows, Inc. v. Los Angeles County* (9th Cir. 2000) 229 F.3d 1258, 1265.)

Graham has the burden as an appellant to cite applicable legal authority. Graham's having failed to do so, we reject his argument.

**The granting of the demurrer did not deprive defendants of the right to file motions for summary judgment, and the trial court did not deprive Graham of his jury trial rights**

Graham contends that because Judge Lavin set a trial date for the claims that were not dismissed, the defendants "had no reason to file their two motions for summary judgment or summary adjudication." Graham also contends that Judge Meiers's granting of the summary judgment motions violated his constitutional right to a jury trial. He further contends that Judge Meiers improperly made a sua sponte motion for judgment on the pleadings.

A demurrer attacks the sufficiency of a pleading. "'A general demurrer may be sustained without leave to amend where it is probable from the nature of the defects and previous unsuccessful attempts to plead that the plaintiff cannot state a cause of action.' [Citations.]" (*Oddone v. Superior Court* (2009) 179 Cal.App.4th 813, 823.) On the other hand, a summary judgment motion attacks whether a triable issue of fact exists. "'The trial court must grant a summary judgment motion when the evidence shows that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citations.] In making this determination, courts view the evidence, including all reasonable inferences supported by that evidence, in the light most favorable to the nonmoving party. [Citations.]' [Citation.]" (*Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 818.)

Judge Lavin's overruling of the demurrer as to certain causes of action did not leave the FAC invulnerable to a later attack by way of summary judgment, nor bar a later motion by Judge Meiers for judgment on the pleadings. "'A motion for judgment on the pleadings may be made at any time either prior to the trial or at the trial itself. [Citation.] The motion may be made even when a general demurrer has been previously overruled. The interests of all parties are advanced by avoiding a trial and reversal for defect in the pleadings. . . . If the demurrer is erroneously overruled, he is acting properly in raising the point again, at his next opportunity. If the trial judge made the former ruling himself, he is not bound by it. [Citation.] And, if the demurrer was overruled by a different

29

judge, the trial judge is equally free to reexamine the sufficiency of the pleading. [Citations.]' [Citation.]" (*Donohue v. State of California* (1986) 178 Cal.App.3d 795, 800–801.)

The sustaining of a demurrer or granting of a motion for summary judgment does not deprive Graham of his right to a jury trial. The jury's role is to act as an independent fact finder. (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 973.) The jury does not decide legal issues. (*Ibid.*) When the trial court sustains a demurrer, it assumes a plaintiff's alleged facts to be true; thus the only remaining issues are legal ones for the court to decide, and not the jury. (*Oddone v. Superior Court*, *supra*, 179 Cal.App.4th at p. 823.) Similarly, when the trial court grants a summary judgment motion, it has determined that no issue of material fact needs to be tried. (*Hypertouch, Inc. v. ValueClick, Inc.*, *supra*, 192 Cal.App.4th at p. 818.)

Thus, the trial court's sustaining of the demurrers and granting of the motions noted above did not deprive Graham of a jury trial because, by definition, there were no material facts for the jury to find.

**Graham failed to follow proper procedures for disqualification of Judge Meiers**

Without citation to the record or legal authority, Graham requests that Judge Meiers "be recused from sitting as the trial court judge in such further proceedings as will be occurring in this lawsuit." A party seeking disqualification of a judge must present a request for disqualification at the earliest practicable opportunity and not for the first time on appeal. (Code Civ. Proc., § 170.3; *In re Steven O.* (1991) 229 Cal.App.3d 46, 54.) Graham has failed to follow proper procedures in requesting disqualification of Judge Meiers. We therefore have nothing to review.

## DISPOSITION

The judgments are affirmed.

NOT TO BE PUBLISHED.


BENDIX, J.*

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

---

**\*** Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.